EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmelo Rivera Torres<br><br>    Demandante-Recurrido<br><br>v.<br><br>Pan Pepín, Inc.<br><br>    Demandado-Peticionario | Certiorari<br><br>2004 TSPR 59<br><br>161 DPR _____ |

Número del Caso: AC-1998-40

Fecha: 21 de abril de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional II

Panel integrado por su Presidenta, Jueza Fiol Matta, la Jueza Rodríguez de Oronoz y el Juez Gierbolini

Abogados de la Parte Peticionaria:

Lcdo. Hugo Rodríguez Díaz
Lcdo. Tristán Reyes Gilestra

Abogado de la Parte Recurida:

Lcdo. Carlos M. Vergne Vargas

Materia: Despido Injustificado y Reclamación de Salarios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmelo Rivera Torres

    Demandante-Recurrido

       v.                                    AC-1998-40

Pan Pepín, Inc.

    Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor CORRADA DEL RÍO

San Juan, Puerto Rico, a 21 de abril de 2004.

Nos corresponde resolver si fue justificado el despido de un vendedor de Pan Pepín, Inc., por éste haber incurrido, por primera y única vez, en una falta catalogada como "grave" en el Manual de Normas de Personal de dicha empresa.

I

El señor Carmelo Rivera Torres (en adelante, "el recurrido") comenzó a trabajar como vendedor de la empresa Pan Pepín, Inc., en el año 1976. En julio de 1994, un supervisor de la referida compañía realizó una inspección en uno de los comercios que atendía el recurrido, encontrando en una góndola cuatro (4) unidades de Pan Pepín

de veinte (20) onzas con trece días de *expirado*, y trece (13) unidades de pan integral con un (1) día de *vencido*.[1] A raíz de dicho hallazgo, el recurrido fue despedido inmediatamente.

Insatisfecho con ese curso de acción, el recurrido presentó una querella contra Pan Pepín ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"). En la misma, alegó haber sido despedido sin justa causa, según lo dispuesto por la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. §§ 185a *et seq.*(en adelante, "Ley Núm. 80"), y por razón de su edad (59 años), ya que fue sustituido por un empleado más joven que él.[2] Por su parte, Pan Pepín planteó que según su reglamentación interna, el recurrido estaba obligado a retirar los productos dos (2) días antes de que se verificara su fecha de expiración, y que éste incumplió con ese requerimiento. Dicha omisión está codificada

---

[1] Pan Pepín sustituye sus productos a base de un sistema de cintas y fecha de expiración. Las bolsas de pan tienen un color de cinta conforme al día en que se producen, y este color le indica al vendedor el día de la semana en que debe retirar el producto de los comercios. Además del color de la cinta, a la bolsa se le imprime una fecha de expiración. El día indicado para retirar el pan de los comercios de acuerdo al color de la cinta es dos (2) días antes de la fecha de expiración impresa. Es decir, el color de cinta indica la fecha de *vencimiento* del producto, que es distinta a la fecha de *expiración*. *Véase Escrito de Apelación*, a la pág. 13.

[2] Para efectos de este recurso, la única causa de acción pertinente es la del alegado despido sin justa causa, ya que el recurrido desistió de su alegación de discrimen por edad en el Informe de Conferencia Preliminar entre Abogados, lo que reiteró mediante una Moción Solicitando Desistimiento Parcial sobre Alegación de Discrimen. *Véase* Apéndice, a las págs. 52 y 68.

como una "falta grave" por el "Manual de Normas Generales de Conducta en el Trabajo para el Personal de Pan Pepín" (en adelante, "Manual de Normas"), razón por la cual Pan Pepín adujo que el despido del recurrido fue justificado.

Mediante Sentencia de 29 de noviembre de 1995, el TPI determinó que el despido fue justificado, ya que el recurrido incumplió con las disposiciones del Manual de Normas al cometer una falta grave que puso en peligro el buen funcionamiento de la empresa. Concluyó, además, que la omisión del recurrido no solo afectaba la imagen de Pan Pepín, sino que la exponía a reclamaciones y multas por parte del Departamento de Asuntos del Consumidor.

El 8 de abril de 1996, el recurrido apeló de dicho dictamen ante el entonces Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Tras atender varias mociones presentadas por las partes, el TCA ordenó la preparación de una exposición narrativa de la prueba. De conformidad, el 18 de julio de 1996, el recurrido presentó ante el TPI un proyecto de la exposición narrativa solicitada. Sin embargo, el 2 de agosto de 1996, Pan Pepín levantó una serie de objeciones y propuso unas enmiendas a la exposición sometida, lo que provocó un virtual tranque en el caso. Debido a ello, el trámite para lograr presentar una exposición narrativa de la prueba aprobada por el TPI se prolongó por cerca de dos (2) años.

Entre tanto, aún pendiente este asunto ante el foro primario, el TCA decidió no esperar más por la aprobación del documento y acogió la exposición narrativa presentada inicialmente por el recurrido. Mediante Sentencia de 26 de junio de 1998, dicho foro concluyó que el despido del recurrido fue injustificado toda vez que el Manual de Normas de Pan Pepín establece que para ser despedido, el empleado tiene que haber sido objeto de al menos tres (3) reprimendas escritas. Como el recurrido no había sido sancionado anteriormente, el TCA razonó que no procedía su despido. Pan Pepín solicitó la reconsideración de dicha decisión, la cual se declaró sin lugar.

Así las cosas, Pan Pepín presentó un *Escrito de Apelación* ante este Tribunal, formulando los siguientes errores:

1. **Erró el Tribunal de Circuito de Apelaciones al resolver el caso tomando en consideración el proyecto de exposición narrativa de la prueba oral presentada por Rivera.**

2. **Erró el Tribunal de Circuito de Apelaciones en la interpretación dada al Manual de Normas Generales de Conducta en el Trabajo del Personal de Pan Pepín, Inc.**

3. **Erró el Tribunal de Circuito de Apelaciones al concluir que la falta cometida por Rivera al dejar mercancía expirada en la góndola de uno de sus clientes no era una que justificaba la sanción del despido.**

4. **Erró el Tribunal de Circuito de Apelaciones al determinar que el despido de Rivera fue injustificado.**

Mediante Resolución de 26 de febrero de 1999, por vía de reconsideración, expedimos el recurso como uno de *certiorari*. Habiendo comparecido las partes, resolvemos.

II

En cuanto al primer señalamiento de error, Pan Pepín alega que el foro apelativo intermedio no debió acoger la exposición narrativa presentada por el recurrido, ya que la misma no fue aprobada por el TPI, según lo requería la entonces vigente Regla 42 del Reglamento del TCA, 4 L.P.R.A. Ap. XXII, R. 42. Dicha acción, adujo Pan Pepín, tuvo el efecto de privar al foro apelativo de los testimonios presentados en relación con el funcionamiento de la empresa y sobre la obligación de los vendedores de sacar el producto de las góndolas cuando está próximo a expirar. Diferimos de la apreciación de Pan Pepín.

Si bien es cierto que la citada Regla 42 del Reglamento del TCA, *supra*, establece que el TPI deberá aprobar la exposición narrativa que se pretenda presentar ante el foro apelativo, la importancia de dicho requisito se evaluará a base de lo determinante que sea ese documento para efectos de resolver los méritos del caso. De ordinario, cuando se señalan errores en la ***apreciación y credibilidad de la prueba y su admisibilidad***, el derecho de apelación implica que el recurso sea perfeccionado mediante la preparación de una exposición narrativa de la prueba. *Pueblo v. Calderón Hernández*, 145 D.P.R. 603, 605 (1998). Sin embargo, cuando el

asunto en apelación **no** gira en torno a la apreciación de la prueba desfilada en instancia— especialmente la prueba testifical— la presentación de una exposición narrativa de la prueba no es indispensable.

En el caso de marras, el TCA entendió que para resolver el asunto en controversia no había que hacer un examen de la apreciación de la prueba testifical presentada ante el foro de instancia. De hecho, mediante la Resolución que declaró sin lugar la moción de reconsideración presentada por Pan Pepín, el TCA expuso que su dictamen sobre despido injustificado no se basó en el proyecto de exposición narrativa de la prueba que el señor Rivera presentó.[3] Por el contrario, dicho foro resolvió que el despido fue injustificado a base de interpretar una sección del Manual de Normas de Pan Pepín; ***es decir, su determinación se basó en una interpretación de derecho sobre un documento que obraba en el expediente apelativo***. Como hemos expresado en otras ocasiones, cuando un tribunal apelativo se enfrenta a interpretar prueba documental, éste se encuentra en igual posición que el foro de instancia, por lo que está en libertad de adoptar su propio criterio al evaluar la prueba. *Véase Municipio de Loiza v. Sucn. Marcial Suarez*, res. el 11 de junio de 2001, 154 D.P.R. ___ (2001), 2001 T.S.P.R. 84, 2001 J.T.S. 87; *Díaz v. Aponte*, 125 D.P.R. 1, 13 (1989).

---

[3] *Véase* Apéndice, a la pág. 33.

Igualmente, hemos reconocido que el Tribunal de Circuito de Apelaciones [ahora Tribunal de Apelaciones] tiene una amplia discreción para implementar los trámites necesarios conducentes a agilizar, en lo posible y sin menoscabar los derechos de las partes, su más pronta adjudicación. *Pueblo v. Calderón Hernández*, *supra*, a la pág. 605. Esta flexibilidad para prescindir de determinados trámites, sin embargo, debe ser prudencial. En vista de que en este caso no era necesario recurrir a la prueba testifical desfilada en el TPI para adjudicar correctamente la controversia, concluimos que el TCA actuó conforme a este precepto al prescindir de una exposición narrativa de la prueba debidamente aprobada.

Resolvemos que no se cometió el primer error.

III

Por entender que los restantes señalamientos de error están relacionados entre sí, los discutimos en conjunto. En esencia, Pan Pepín plantea que la omisión del recurrido señor Rivera Torres de sacar los panes antes del vencimiento de su fecha de vigencia constituyó una falta grave que justificó su despido. Veamos.

En nuestro ordenamiento, el contrato de servicios que formaliza la relación empleado-patrono representa en un gran número de casos, para los obreros y sus dependientes, el único medio de sustento económico. *Díaz Fontánez v. Wyndham Hotel Corp.*, res. el 24 de octubre de 2001, 155 D.P.R. ___ (2001), 2001 T.S.P.R. 141, 2001

J.T.S. 146.[4] El rompimiento de dicha relación conlleva, para muchas personas, la pérdida de tal sustento y del único medio de acceso a los artículos y servicios indispensables del diario vivir. *Id.*, a la pág. 12. Por ello, existe un interés apremiante del Estado en regular las relaciones obrero patronales, que se enmarca dentro de una política pública dirigida a proteger los derechos de los trabajadores. *Id.*; *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986). En atención a dicho propósito, la Ley Núm. 80, *supra*, debe siempre interpretarse de manera liberal y favorable al empleado. *Jusino Figueroa v. Walgreens of San Patricio*, res. el 1 de noviembre de 2001, 155 D.P.R. ____ (2001), 2001 T.S.P.R. 150, 2001 J.T.S. 154; *Belk Arce v. Martínez*, 146 D.P.R. 215 (1998); *Martínez Reyes v. Tribunal Superior*, 104 D.P.R. 407 (1975).

A tenor de lo anterior, el legislador incorporó el estándar de "justa causa" como limitación a toda acción de despido de parte del patrono.[5] Así pues, la

---

[4] *Véase además* Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80, Departamento del Trabajo Y Recursos Humanos del Gobierno de Puerto Rico, a la pág. 1 (1996).

[5] El Artículo 1 de la Ley Núm. 80, 29 L.P.R.A. § 185a, establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, donde trabaja mediante remuneración de clase alguna, contratado sin tiempo determinado, y que fuere despedido sin justa causa, tendrá derecho a recibir de su patrono, además del sueldo que hubiere devengado, el salario correspondiente a un mes por concepto de indemnización, conocida ésta como la indemnización básica, y una indemnización

continúa...

justificación de un despido se evalúa a la luz de las disposiciones de la Ley Núm. 80, *supra*. Específicamente, el Artículo 2 de dicha Ley, 29 L.P.R.A. § 185b, dispone que se entenderá como "justa causa" para el despido de un empleado lo siguiente:

(a) que el obrero siga **un _patrón_ de conducta impropia**;

(b) **la actitud del empleado** de no rendir su trabajo en forma eficiente o de hacerlo de forma tardía y negligentemente o en violación de la normas de calidad del producto que se produce o maneja por el establecimiento;

(c) **violación _reiterada_ por el empleado de las reglas y reglamentos razonables** establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado;

(d) cierre total, temporero o parcial de las operaciones del establecimiento;

(e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público;

(f) reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

No se considerará despido por justa causa aquél que se hace por mero capricho del patrón o

---

... 5 continuación

progresiva adicional equivalente a una semana por cada año de servicio. La compensación en su totalidad constituye el remedio a concederse al empleado, conocido comúnmente como la mesada.

sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Véase además Díaz Fontánez v. Wyndham Hotel Corp., supra*, a la pág. 13.

No obstante, la Ley Núm. 80, *supra*, no pretende ser un código de conducta contentivo de un listado taxativo de faltas claramente definidas, ni de las sanciones correspondientes a cada falta cometida. *Véase Jusino Figueroa v. Walgreens of San Patricio, supra*, a la pág. 6; *Secretario. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542 (1979). Debido a ello, el patrono tiene la potestad de adoptar reglamentos razonables con el fin de conseguir el buen funcionamiento de la empresa. *Id.* Ahora bien, en cualquier caso, para que las violaciones a las normas del trabajo constituyan "justa causa" para el despido, el patrono tiene que probar la razonabilidad de las normas establecidas, que le suministró copia escrita de éstas al empleado, y que el empleado las violó. *Jusino Figueroa v. Walgreens of San Patricio, supra; Rivera Águila v. K-Mart de Puerto Rico*, 123 D.P.R. 599 (1989). Además, el Artículo 8 de la Ley Núm. 80, 29 L.P.R.A. § 185k, crea una presunción de que el despido del empleado fue injustificado; o sea, en una acción por despido injustificado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. *Díaz Fontánez v. Wyndham Hotel Corp., supra*, a la pág. 16; *Belk Arce v. Martínez, supra; Secretario del Trabajo v. I.T.T., supra*.

Como regla general, un patrón de incumplimiento con las normas aprobadas por el patrono para el funcionamiento de la empresa cualifica como "justa causa" para el despido de un empleado. Asimismo, **aunque la ley no favorece el despido como sanción a la primera falta**, ello podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio, y por tanto, constituiría una imprudencia esperar su reiteración para despedirlo. *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650 (1994); *Secretario del Trabajo v. I.T.T.*, *supra*, a la pág. 544.

En el caso de marras, el TCA concluyó que el Manual de Normas dispone en su parte introductoria que para despedir a un empleado de la empresa se requiere al menos tres (3) reprimendas escritas previas. Al referirnos a la mencionada disposición del Manual de Normas, observamos que ésta establece lo siguiente:

> [e]n cada caso de violación de estas reglas, el empleado será objeto de medidas disciplinarias. El no tomar medidas disciplinarias no debe ser interpretado por el empleado como una condonación a la conducta prohibida. La acción disciplinaria, que puede incluir hasta el despido, dependerá de las circunstancias agravantes o atenuantes, la seriedad de la falta y el récord del empleado. El empleado que reciba tres (3) o más reprimendas escritas por violación a una o más de estas normas dentro de un período de dieciocho

(18) meses consecutivos será despedido de su empleo.[6]

Se desprende de la disposición citada que el incumplimiento de alguna regla dispuesta en el Manual de Normas conllevará una acción disciplinaria que puede incluir hasta el despido. Sin embargo, la sanción a aplicarse se determinará a base de: 1) las circunstancias agravantes o atenuantes; 2) la seriedad de la falta; y 3) el récord del empleado. Asimismo, se indica que si el empleado tiene tres (3) o más reprimendas escritas dentro de un período de dieciocho (18) meses, también será despedido.

De lo anterior, concluimos que es erróneo lo resuelto por el TCA en cuanto a que *en todo caso* son necesarias tres (3) reprimendas escritas antes de despedir a un empleado. Según establece el Manual de Normas, hay algunas faltas cuya única violación acarrea el despido automático. Por tanto, nos corresponde ahora resolver si la falta cometida por el recurrido conllevaba su despido inmediato de la empresa. Veamos.

IV

Como expresáramos en la sección precedente, bajo el palio de la Ley Núm. 80, *supra*, una falta o acto aislado puede dar lugar al despido del empleado si ésta es de tal seriedad o naturaleza que revela una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría una imprudencia esperar su

---

[6] *Véase* Apéndice, a la pág. 821.

reiteración para separarlo de su puesto. *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada*, *supra*; *Secretario del Trabajo v. I.T.T.*, *supra*. Pan Pepín alega que dado que la falta cometida por el recurrido está definida como "grave" en el Manual de Normas, su comisión acarreaba el despido inmediato. No tiene razón Pan Pepín.

El Manual de Normas de Pan Pepín cataloga un total de treinta y siete (37) Reglas (Reglas 1 a la 37), las cuales establecen una serie de principios generales y específicos en torno a la conducta que deberán observar los empleados de Pan Pepín. Al referirnos a cada Regla allí preceptuada, observamos que algunas de éstas establecen la sanción que acarrearía su violación. Otras, sin embargo, aunque estatuyen prohibiciones y deberes, no disponen de sanción alguna. La disposición en controversia en el caso de autos es la Regla 37,[7] la cual contiene un total de dieciseis (16) incisos que detallan la obligaciones por las que deberán regirse aquellos empleados que, como el recurrido, se desempeñan como vendedores. De las dieciséis (16) obligaciones, solamente el inciso (13) establece de forma explícita una sanción: "[s]erá motivo de despido inmediato el dejar propiedad y/o vehículos de la Compañía fuera del

---

[7] Regla 37 del Manual de Normas, sobre "Normas adicionales que también deben cumplir aquellos empleados que ocupen posiciones de venta." Apéndice, a la pág. 825.

perímetro de la Compañía."[8]    La disposición que nos

ocupa, la del inciso (5), expresa que:

> [t]odo vendedor de ruta está sujeto a inspecciones periódicas de su territorio por parte de supervisores o personal gerencial de la Compañía.  Se considerarán faltas graves las siguientes deficiencias:
>
> **a.  *Pan con codificación expirada***
> b.  Abandono o no atención debida a clientes
> c.  Alteración de hora y días de servicio sin consultar a un supervisor de ruta (énfasis suplido).[9]

De lo anterior observamos que, si bien es cierto que

la falta cometida está catalogada como "grave", la Regla

no dispone expresamente que el incurrir en la conducta

proscrita conlleve como sanción el despido de forma

automática ***ante la primera violación***, tal y como se ocupó

de hacerlo con otras violaciones de carácter "grave" en

el mismo Manual de Normas.[10]  Por tanto, el patrono debió

---

[8] *Id.*, a la pág. 826.

[9] *Id.*

[10] Así por ejemplo, las siguientes Reglas del Manual de Normas disponen para el despido inmediato:

**Regla 4**– (Tarjetas de Ponchar), ...[s]e prohíbe ponchar la tarjeta de otro empleado y/o alterar y/o corregir cualquier entrada hecha en ésta. ***El hacerlo podría conllevar el despido inmediato....***

**Regla 14**– (Condiciones Peligrosas y Accidentes),...[a]ccidente de tránsito donde se pruebe que ha habido negligencia por parte del empleado mientras maneja un vehículo de la Compañía se considerará falta grave y el empleado estará sujeto a la acción

continúa...

regirse por lo dispuesto en la sección introductoria del Manual de Normas respecto al curso a seguir en caso de violación de alguna norma.[11] Es decir, el patrono debió aplicar una sanción, que pudo incluir hasta el despido, a base de: 1) la seriedad de la falta; 2) circunstancias agravantes o atenuantes; y 3) récord del empleado. Habida cuenta de que dentro de un contrato de empleo, el manual de reglas aprobado por el patrono es parte integral de dicho contrato, el recurrido tenía derecho a que se tomaran en cuenta esos factores al momento de evaluarse su despido. *Véase Santiago v. Kodak Caribbean*, 129 D.P.R. 763 (1992); Charles Zeno Santiago y Víctor M.

---

... [10] continuación

disciplinaria, *incluyendo despido inmediato dependiendo de la gravedad del accidente*...

**Regla 16**– (Pasajeros) [e]stá terminantemente prohibido ceder el volante o transportar en vehículos oficiales de la empresa personas no autorizadas y/o ajenas a la Compañía. **La violación de esta norma conlleva despido inmediato.**

**Regla 17**– (Embriaguez o Intoxicación por Droga), ...[e]l tráfico de drogas, incluyendo la posesión, uso y venta, **será causa para el despido del empleado.** Si se identifica a algún empleado usando drogas, siempre y cuando no sean medicadas, **podrá ser despedido inmediatamente...**

**Regla 20**– (Comisión de Delito) [u]n empleado que haya sido convicto por delito grave, o por delito menos grave que envuelva depravación moral **será despedido de su empleo**...*Véase* Apéndice, a las págs. 821–824.

[11] *Véase* págs. 7-8, *supra*.

Bermúdez, Tratado de Derecho del Trabajo, Tomo I, a la pág. 109 (Pubs. J.T.S. 2003).[12]

Al emplear ese estándar analítico a la situación de marras, tenemos que concluir que el dejar cuatro (4) unidades de productos *expirados*[13] en las góndolas de un comercio— si bien es una falta seria cuya **reiteración** podría afectar grandemente la operación e imagen de la empresa— por si sola no es una omisión que amerite el remedio radical de despedir al empleado. O sea, si evaluamos la "seriedad de la falta", no nos parece que ésta (siendo la primera vez que se comete por el recurrido) sea una de tal "naturaleza que revele una actitud o un detalle de su carácter [del vendedor], tan lesivo a la paz y al buen orden de la empresa, que constituiría una imprudencia esperar su reiteración para separarlo del establecimiento. *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada*, supra; *Secretario del Trabajo v. I.T.T.*, supra.

Asimismo, como elemento atenuante, observamos que la omisión del recurrido se trató de un acto aislado— no

---

[12] En el citado caso de *Santiago v. Kodak Caribbean*, *supra*, a las págs. 775-776, establecimos que si bien las obligaciones que se establecen en un manual de reglas son fuente de obligación para el empleado, también los beneficios que allí se mencionan son fuentes de obligación para el patrono. Más aún, en esa ocasión equiparamos el referido manual a un contrato de adhesión al cual había que aplicarle los principios de interpretación general de los contratos; en específico, el Artículo 1237 de Código Civil, 31 L.P.R.A. § 3475.

[13] La otras trece (13) unidades estaban solamente *vencidas*. *Véase* escolio 1, *supra*.

reiterado o indicativo de un patrón o actitud de incumplimiento— que se reflejó por vez primera luego de dieciocho (18) años de servicio sin mácula alguna en su récord de empleado. Por tanto, ausente una expresión específica y clara en el Manual de Normas en cuanto a que dicha falta acarreaba el despido automático, era el derecho del empleado que se tomaran en cuenta estos factores para determinar si el despido debía o no llevarse a cabo. En vista de que el recurrido fue despedido de manera inmediata, y que no se sopesaron los anteriores elementos, resolvemos que la sanción de despido fue irrazonable y, por ende, injustificada bajo el palio de la Ley Núm. 80, *supra*.

Aclaramos, no obstante, que Pan Pepín tiene todo el derecho de exigirle a sus empleados los estándares de diligencia necesarios para que sus productos presenten los niveles de calidad adecuados. Igualmente, la empresa tiene el deber de asegurarse que los productos que pone a circular en el mercado sean seguros para los consumidores y en cumplimiento de las regulaciones pertinentes. *Véase Rivera Águila v. K-Mart*, *supra*. Ahora bien, en atención a la importante política pública a favor de los trabajadores, tales exigencias, requisitos y sanciones deben ser razonables y, sobre todo, claras y detalladas, de modo que el trabajador tenga presente cuales son sus deberes, así como las consecuencias que acarrea su incumplimiento. *Véase Delgado Zayas v. Hospital*

*Interamericano*, *supra*.[14] El mero hecho de que el patrono haya clasificado como "falta grave" determinada conducta, es insuficiente, sin más, para despedir a un obrero que incurre por primera vez en dicha conducta. Independientemente de la etiqueta con la que el patrono catalogó la falta incurrida por el recurrido, la naturaleza de ésta— dentro del contexto de este caso— no se ubica dentro del criterio de gravedad que hemos reconocido en nuestra jurisprudencia para justificar un despido a la primera falta. *Cf. Jusino Figueroa v. Walgreens of San Patricio*, *supra*; *Delgado Zayas v. Hospital Interamericano*, *supra*; *Autoridad de Edificios Públicos v. Unión Independiente de Empleados*, 130 D.P.R. 983 (1992); *Báez v. Cooper Labs.*, 120 D.P.R. 145 (1987); *Secretario del Trabajo v. I.T.T.*, *supra.*

V

Por los fundamentos que anteceden, se modifica la Sentencia emitida por el TCA toda vez que, si bien dicho foro resolvió que el despido del recurrido fue injustificado, éste fundamentó su curso decisorio en una interpretación imprecisa del Manual de Normas de Pan Pepín. Se devuelve el caso al TPI para que determine la cuantía que le corresponde al recurrido en concepto de

---

[14] En este caso, mediante Opinión emitida por el Juez Asociado señor Hernández Denton, resolvimos que el demandante fue despedido justificadamente toda vez que el patrono había aprobado unas reglas razonables y estrictas contra el hostigamiento sexual en el trabajo, y éste **sabía que el despido era la sanción a aplicarse por una primera violación**. *Véase además* Charles Zeno Santiago y Víctor M. Bermúdez, *supra*, a la pág. 114.

mesada.   Así   modificado,   se   confirma   el   dictamen recurrido.

Se dictará Sentencia de Conformidad.


                                        BALTASAR CORRADA DEL RÍO
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Carmelo Rivera Torres

    Demandante-Recurrido

      v.                                    AC-1998-40

Pan Pepín, Inc.

    Demandado-Peticionario


SENTENCIA


San Juan, Puerto Rico, a 21 de abril de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se modifica la Sentencia emitida por el Tribunal de Apelaciones toda vez que, si bien dicho foro resolvió que el despido del recurrido fue injustificado, éste fundamentó su curso decisorio en una interpretación imprecisa del Manual de Normas de Pan Pepín.

Se devuelve el caso al Tribunal de Primera Instancia para que determine la cuantía que le corresponde al recurrido en concepto de mesada. Así modificado, se confirma el dictamen recurrido.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino. La Juez Asociada señora Fiol Matta está inhibida.


                          Patricia Otón Olivieri
                   Secretaria del Tribunal Supremo