SENTENCIA
Ramón Miranda Ayala (Miranda Ayala) trabajó para el Hospital San Pablo desde mayo de 1979 hasta el 18 de octubre de 2004, cuando fue despedido. El 29 de diciembre de 2004 Miranda Ayala, su esposa Sonia Calderón Sostre y la Sociedad de Bienes Gananciales constituida por ambos presentaron, ante la Sala Superior de Bayamón del Tribu *735 nal de Primera Instancia, una querella contra el Hospital San Pablo bajo el procedimiento sumario establecido por la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. see. 3118 et seq.). En ésta alegaron que el despido se debió a discrimen “por sus actividades organizativas para la negociación colectiva” o por despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a-185m, o por ambos.
Oportunamente, el Hospital San Pablo contestó la querella levantando varias defensas afirmativas, entre éstas, que no había cometido discrimen y que el despido estuvo justificado porque el querellante había incurrido en conducta impropia al apropiarse de varias cajas de cerveza pertenecientes al hospital, y que esta conducta constituía una violación a las normas de conducta establecidas por el Hospital en su manual de normas.
I
Miranda Ayala ocupaba el puesto de Técnico de Ropería que pertenecía al Departamento de Servicios Ambientales del Hospital San Pablo. Sus funciones consistían en recoger la ropa sucia de los pisos, las salas de operaciones y las salas de parto, contarlas, empacarlas y llevarlas en unos carritos fuera del hospital. El hospital tenía almacenadas varias cajas de cerveza en un cuarto de máquinas. El 10 de octubre de 2004 Miranda Ayala entró aproximadamente dos veces al cuarto de máquinas donde estaban las cervezas y se llevó dos cajas de éstas para su uso personal. Dicho hecho fue filmado por las cámaras de seguridad del hospital. Miranda Ayala originalmente negó los hechos, pero al ser confrontado con el vídeo de seguridad, los aceptó. En dicho vídeo se veía claramente a Miranda Ayala llevándose las dos cajas del cuarto de máquinas.
Miranda Ayala trabajó 25 años en el hospital; su expediente de empleo revela que éste había recibido varias ad *736 vertencias en cuanto a su conducta y disciplina en el empleo. Al revisar el expediente disciplinario encontramos que el empleado había sido suspendido por una semana en 1983 por haber ofendido a otra de las empleadas del hospital. En 1992, al ser confrontado por mentir en relación con unas ausencias, Miranda Ayala fue advertido de que la próxima vez que se ausentara tenía que justificar su ausencia con un certificado médico, y que si no cumplía con las normas, se le aplicarían normas disciplinarias más severas como el despido. El expediente revela, además, varias Hojas de Intervención del Programa de Disciplina Progresiva del hospital, donde se le llamó la atención por la falta de suplido de sábanas y por su incumplimiento con el conteo de ropa de la Sala de Operaciones, entre otras faltas.(1)
El 10 de junio de 2005, luego de celebrada la correspondiente vista, el Tribunal de Primera Instancia emitió una sentencia mediante la cual desestimó la querella sin la imposición de costas ni honorarios de abogado. En cuanto a la alegación de discrimen sindical, el tribunal se declaró sin jurisdicción por tratarse de un asunto de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo. En cuanto a la alegación de despido injustificado, el tribunal determinó que existió justa causa para el despido.
Inconforme con el dictamen, Miranda Ayala presentó un *737 recurso de apelación ante el Tribunal de Apelaciones, el cual confirmó la sentencia apelada. Insatisfecho, Miranda Ayala acudió —mediante un recurso de certiorari— a este Tribunal. Alega que procede revocar la sentencia emitida por el foro apelativo intermedio debido a que dicho foro incidió
... al confirmar la Sentencia dictada por el Tribunal de Primera Instancia desestimando la querella radicada al concluir que el despido del peticionario fue justificado a la luz de la totalidad de los hechos de este caso. Petición de certiorari, pág. 4.
Atendida la petición de certiorari, el 23 de junio de 2006 le concedimos a la parte demandada recurrida el término de quince días para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar sentencia revocatoria de la emitida por el Tribunal de Apelaciones. Dicha parte ha comparecido. Por estar en posición de resolver el recurso, procedemos a hacerlo. Confirmamos; veamos por qué.
II
El Art. 1 de la Ley Núm. 80, ante, 32 L.P.R.A. sec. 185a, establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, que sea despedido de su cargo sin que haya mediado justa causa, tendrá derecho a recibir de su patrono una indemnización según dispone la ley. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 648-649 (1994).
La referida ley dispone en su Art. 2 (29 L.P.R.A. sec. 185b), en lo aquí pertinente, que se entenderá por justa causa para el despido, entre otras causas: (i) que el obrero siga un patrón de conducta impropia o desordenada; (ii) la actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad; (iii) violación reiterada por el *738 empleado de las reglas y los reglamentos razonables establecidos para el funcionamiento del establecimiento, siempre que copia escrita de éstos se haya suministrado oportunamente al empleado. Las instancias antes enumeradas son sólo ejemplos de las posibles causas que constituyen justa causa para el despido.
La referida Ley Núm. 80 no favorece que el patrono despida al empleado como sanción por una primera falta o infracción, salvo cuando por la gravedad y potencial de agravio de la conducta en cuestión se haya puesto en riesgo el orden, la seguridad o la eficiencia del establecimiento. Rivera v. Pan Pepín, 161 D.P.R. 681 (2004); Jusino et als. v. Walgreens, 155 D.P.R. 560 (2001); Srio. del Trabajo v. G.P. Inds., Inc., 153 D.P.R. 223 (2001); Delgado Zayas v. Hosp. Int. Med. Avanzada, ante; Srio. del Trabajo v. I.T.T., 108 D.P.R. 536 (1979).
En cuanto al procedimiento, en una acción por despido injustificado de un empleado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. Todo despido es injustificado hasta tanto el patrono demuestre justa causa para su acción. Una vez que el patrono interpone como defensa afirmativa que ha mediado justa causa para el despido, le corresponde a éste entonces probar, por preponderancia de la prueba, que el despido estuvo justificado. Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 378-379 (2001).
Por otro lado, y en lo pertinente, la ley dispone que “[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento”. 29 L.P.R.A. sec. 185b.
En Srio. del Trabajo v. I.T.T., ante, pág. 542, establecimos que
[l]a Ley no pretende ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta conteniendo una lista de *739 faltqs claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Esa es opción del patrono que puede adoptar reglas y reglamentos razonables que estime necesarios para el buen funcionamiento de la empresa. (Escolio omitido y énfasis suplido.)
Esto es así ya que el patrono “tiene derecho a evaluar a su personal, a base de los valores morales y del orden público prevalecientes en Puerto Rico ... cuando el cumplimiento o violación de éstos puede mantener o alterar el buen y normal funcionamiento de la empresa.” (Énfasis en el original suprimido y énfasis nuestro.) Srio. del Trabajo v. G.P Inds., Inc., ante, pág. 246.
Por último, debe señalarse que el Hospital San Pablo tiene un Manual de Políticas, Normas y Beneficios, que específicamente indica que la deshonestidad y la apropiación indebida de propiedad ajena, bien sea del Hospital San Pablo, de un paciente o de un compañero, no será tolerada.
III
En el caso ante nuestra consideración, la parte peticionaria reconoce que fue un error de juicio de su parte apropiarse de dos cajas de cerveza, pero entiende que el castigo impuesto por el patrono es desproporcionado a la falta cometida. Expone dos argumentos en apoyo a su alegación, a saber: (1) que se trata de unas cajas de cerveza que hacía aproximadamente un año que estaban almacenadas en el hospital y (2) que todo el personal del hospital sabía que las cervezas estaban en un lugar donde existe alta temperatura (el cuarto de máquinas) con el propósito de decomisarlas, ya que habían perdido su calidad. No le asiste la razón.
El Manual de Normas de Conducta del hospital establece que la deshonestidad y la apropiación indebida de propiedad ajena no serán toleradas en el lugar de trabajo. *740 Miranda Ayala tenía conocimiento de estas normas de conducta, ya que el hospital le había hecho entrega de una copia del manual. Dicho acto evidencia que el empleado era consciente de las posibles repercusiones de sus actos. Esto también lo confirma el testimonio del peticionario en la vista del caso, donde expresó: "... que si no me enfrentan con el vídeo lo seguiría negando porque yo sabía, me imaginé que me iban a botar por eso.” Apéndice, pág. 172.
No existe controversia en cuanto al hecho de que el peticionario Miranda Ayala incurrió en la conducta de “apropiación indebida de propiedad del Hospital”, al llevarse a su casa dos cajas de cerveza. Aunque al principio lo negó, al ser confrontado con un vídeo que reflejaba la acción, lo admitió. “No podía negarlo, estaba en el vídeo”, expresó en una deposición. Apéndice, pág. 97.
La acción del peticionario violó las normas de conducta del hospital e, incluso, podría constituir una conducta delictiva. La única defensa del peticionario es que las cervezas estaban dañadas e iban a ser decomisadas. Esto no lo sabía el peticionario cuando llevó a cabo la acción, pues trató de consumirlas.(2) Incluso, parece que el hospital no se había percatado que las cervezas estaban “dañadas”, porque al darse cuenta que las cajas de cerveza que tenían almacenadas estaban desapareciendo, establecieron un sistema de vigilancia electrónica para detectar quién o quiénes estaban sustrayendo las cajas de cerveza de un área controlada.
La Guía Revisada para la Aplicación de la Ley Núm. 80 dispone, al interpretar la disposición de su Art. 2, supra, que
[e]n circunstancias especiales, ciertos actos aislados pueden revestir tal seriedad que pueden dar base al despido justificado ya que pueden poner de manifiesto una clara e indubita *741 ble condición de carácter, que por la gravedad de las consecuencias que hayan acarreado o que puedan acarrear, o por revelar, de por sí, una actitud no susceptible de cambio, ponen de relieve, desde ese momento, aquella configuración del carácter que el legislador sabiamente exigió, como norma general, que no se dejase depender en su apreciación de un acto aislado del empleado. Guía Revisada para la Aplicación de la Ley Núm. 80, Departamento del Trabajo y Recursos Humanos, 2002, pág. 32.
No resulta necesario incluir en un reglamento o manual de disciplina ciertas normas cuya violación constituye una falta mayor. “[U]na persona de inteligencia normal tiene que saber que asesinar a otro empleado en el lugar de trabajo, agredir físicamente al patrono sin razón alguna que justifique este hecho, hurtar mercancía del patrono ... constituyen faltas mayores o graves [en las] que no debe incurrir nunca”. (Énfasis nuestro.) A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, 7ma ed., San Juan, [ed. del autor], 2001, pág. 138.
En Aut. Edif. Púb. v. Unión Indep. Emp. A.E.P., 130 D.P.R. 983 (1992), este Tribunal resolvió que mentir en una solicitud de empleo en cuanto a delitos cometidos previamente constituye una falta grave que puede ser válida para el despido. En dicho caso expresamos que el mentir tiende a destruir la dinámica con el empleado y afecta el buen funcionamiento de la empresa. Este acto, similar al que presenta el caso de autos, es un acto de deshonestidad que denota una ausencia de valor moral.(3)
Miranda Ayala alega que los hechos del presente caso se asemejan a los hechos de los casos Srio. del Trabajo v. I.T.T., ante, y Rivera v. Pan Pepín, ante. Entiende que, al igual que lo resuelto en los casos antes mencionados, su *742 falta no justifica el despido por una primera ofensa. No le asiste la razón; un análisis de los referidos casos demuestra que son distinguibles del presente caso.(4)
Debido a la gravedad de la falta cometida por Miranda Ayala, el hospital correctamente decidió prescindir de sus servicios; sobre todo cuando consideramos que, en relación con anteriores infracciones, el hospital le había advertido a Miranda Ayala que podía ser objeto de sanciones mayores, incluso el despido.
En fin, la actuación del empleado violó las normas razonables del hospital y refleja una actitud y un detalle de su carácter lesivo a la ordenada marcha de éste. No existen vicios de arbitrariedad en la decisión tomada por el Hospital.
IV
Por los fundamentos antes expresados, se dicta sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones, en vista del hecho de la existencia de justa causa para el despido.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rebo *743 lio López emitió una opinión de conformidad, a la cual se unió el Juez Presidente Señor Hernández Denton. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente. La Juez Asociada Señora Fiol Matta disintió sin opinión escrita.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por el
Juez Asociado Señor Rebollo López, a la cual se une el Juez Presidente Señor Hernández Denton.
Suscribimos, totalmente, la correcta y bien fundamentada sentencia que emite el Tribunal en el presente caso. Sin embargo, hemos considerado procedente expresarnos por separado ante la errónea opinión disidente que se emite, la cual, de no ser refutada, puede causar confusión a nivel de instancia y en mentes impresionables.
La opinión disidente pretende dar la impresión de que el Tribunal, al avalar el despido decretado, comete una injusticia en vista de que el despido decretado “fue una medida disciplinaria extrema, que no guarda proporción alguna con la falta cometida” (énfasis en el original); que la mercancía hurtada tenía poco valor y estaba próxima a ser decomisada; que “[a]un aquellos que a veces se comportan truhanamente merecen” (énfasis suplido) protección para poderse ganar la vida y sostener a su familia, y que el decreto mayoritario le da peso a algunas faltas de poca importancia cometidas anteriormente por el empleado por encima del hecho de que dicho empleado llevaba trabajando veinticinco años en el hospital recurrido y que éste estaba activamente inmerso en actividades laborales protegidas constitucionalmente. Opinión disidente, págs. 747 y 748.
*744 De entrada, debe señalarse que nuestro ordenamiento jurídico no protege a los ciudadanos deshonestos, esto es, no brinda protección a los ladrones. Justamente, el presente caso trata de una de las acciones u ofensas más serias en que puede incurrir un empleado, esto es, hurtar de su patrono. Este acto es indicativo de falta de lealtad y ausencia de los más fundamentales valores morales de parte del empleado, conducta que el patrono tiene derecho a catalogar en un manual de empleados —como aquí se hizo— como una falta grave que tiene como consecuencia el despido del empleado.
Por otro lado, resulta importante enfatizar que no importa que la mercancía que se hurte tenga un valor mínimo. Lo verdaderamente importante es si el empleado cometió o no el hurto. Si bien es cierto que una persona puede estar en un momento determinado más o menos intoxicado, dependiendo del número de tragos que haya ingerido, una persona no puede ser más o menos honesta. Ello debido a que la honestidad es una característica inherente al ser humano. En otras palabras, uno es honesto o no lo es. Ello no depende del número de objetos que se hurte ni del valor de éstos.
Por otra parte, la conducta en que había incurrido el empleado con anterioridad al día en que hurtó la mercancía en controversia —la cual la opinión disidente sorprendentemente cataloga como “faltas de poca importancia”— fortalecen y justifican la decisión del patrono de despedir al empleado. Recordemos que éste había sido objeto de varias advertencias relativas a su conducta anterior en el empleo, tales como: incurrir en conducta ofensiva con una compañera empleada, la cual le costó una semana de suspensión en el empleo; mentir sobre las razones que tuvo para ausentarse del empleo —lo cual demuestra falta de honestidad— tras lo cual se le advirtió que por las próximas infracciones podría ser despedido, y negligencia en el desempeño de sus deberes, relativa a la “falta de suplido de sábanas” y por incumplimiento con el conteo correcto de ropa de la Sala de Operaciones del hospital.
*745 Juzgamos el caso, no a base de especulaciones como se hace en la opinión disidente —al expresar que, quizás, el patrono despidió al empleado por sus actividades laborales o por no continuar pagándole los salarios altos que ganaba— sino a base de los hechos incontrovertidos del caso. Éstos son: el empleado, en efecto, cometió el hurto; primeramente lo negó y luego lo aceptó al ser confrontado con un video que grabó lo ocurrido, y, como si lo antes expuesto fuera poco, el empleado expresó que lo hubiera seguido negando si no hubiera existido el video.
Ante ese cuadro de hechos, demostrativo de deshonestidad en su máxima expresión, ¿se puede sancionar a un patrono por despedir al empleado?; ¿hay necesidad de especular sobre la razón para el despido más allá de lo ex-presado?
Realmente no alcanzamos a comprender cómo se puede argumentar que en el presente caso no hubo justa causa para el despido, independientemente de los años que el empleado llevara trabajando en el hospital. Este Tribunal no puede convertirse en el protector de empleados truhanes e indeseables en alegada protección del derecho a ganarse la vida y sostener a su familia. Aquellos que ejercen este derecho deben saber que tienen que comportase como personas honestas, honradas y trabajadoras. Esos sí sonlos que merecen nuestra protección.

 Las Hojas de Intervención en el expediente son por los hechos siguientes:
En 1997 se reprendió a Miranda Ayala por frecuentar áreas fuera de su rutina de recogido y entrega de ropa. En esa ocasión se le orientó sobre las normas de conducta que estaba violando, se le repasó la responsabilidad de sus labores y se le advirtió que limitara las interrupciones en sus labores, y que de persistir, se tomarían otras medidas. Apéndice, pág. 140.
En 2001 Miranda Ayala, en dos ocasiones, respondió de manera irrespetuosa cuando se le cuestionó acerca de la falta de su uniforme completo y por la falta de suplido de sábanas en cuatro pisos del hospital. Por esto se le suspendió de empleo y sueldo por una semana. Se le advirtió que, de volver a incurrir en dicha conducta, se le despediría indefinidamente. Apéndice, pág. 142.
En 2004 “el Sr. Miranda no sigue las instrucciones impartidas para el conteo de ropa de Sala de Operaciones. ... [S]e verificó un paquete que contenía ropa scrub, hampers bag, sábanas blancas y más de 25 sábanas verdes mojadas”. Se orientó al Sr. Miranda en relación con las normas de empaque y se le advirtió que se tomarían otras medidas disciplinarias de prevalecer esta conducta. Apéndice, pág. 144.

 Durante la vista del caso, el peticionario declaró, en síntesis, que tenía duda de si las cervezas estaban buenas o malas. Si estaban buenas, se las tomaría. Puso un “paquetito” a enfriar para probar si estaban buenas. Como estaban malas, las botó.

 Los árbitros tienen las facultades de analizar las penalidades impuestas a los empleados que están gobernados por convenios colectivos. Las ofensas extremadamente serias, como el robo, rehusarse persistentemente a obedecer órdenes legítimas, etc., justifican un despido sin la necesidad de advertencias previas o tratar de corregir la disciplina. En este tipo de ofensas, los árbitros confirman los despidos por estas circunstancias. A. Miles Ruben, How Arbitration Works, 6ta ed., Washington D.C., BNA Books, 2003, págs. 964-967.

 En Srio. del Trabajo v. I.T.T., 108 D.P.R. 536 (1979), un empleado, luego de trabajar diecisiete años para la compañía, fue despedido por haber mentido con el propósito de obtener una licencia para ausentarse de su trabajo. El reglamento de I.T.T. Hemisphere Directories, Inc. contenía una disposición que castigaba con el despido inmediato por una mentira hacia el patrono. Este Tribunal determinó que el castigo era muy severo para una primera ofensa por existir en el reglamento otras ofensas mucho más graves que requerían la comisión de tres ofensas antes del despido. En el caso ante nos no hay duda de que la ofensa es grave y que el reglamento es claro al disponer que no será tolerada la apropiación de propiedad ajena por parte de un empleado.
Por otro lado, en Rivera v. Pan Pepín, 161 D.P.R. 681 (2004), se despidió a un empleado por violar una falta catalogada como grave en el Manual de Normas del Empleado, la cual consistía en no retirar mercancía expirada de las góndolas de uno de los comercios. Se determinó que el despido no fue justificado debido a que la norma no disponía expresamente que el incurrir en la conducta proscrita conllevaría como sanción el despido. En la situación de hechos ante nuestra consideración, repetimos, el manual especifica que la conducta de apropiación de material ajeno no será tolerada. El manual es claro y dispone específicamente que la honestidad de los empleados es un elemento de la conducta esencial para el patrono.