EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edwin González Santiago<br><br>Recurrido<br><br>v.<br><br>Baxter Healthcare of Puerto Rico<br><br>Peticionario | Certiorari<br><br>2019 TSPR 79<br><br>202 DPR \_\_\_\_ |

Número del Caso:  CC-2017-649


Fecha: 25 de abril de 2019


Tribunal de Apelaciones:


        Región Judicial de Mayagüez – Utuado, Panel XI


Abogados de la parte peticionaria:

        Lcdo. José A. Silva Cofresí
        Lcdo. José Iván Caraballo González


Abogado de la parte recurrida:

        Lcdo. Edgardo Santiago Llorens


Materia: Derecho Laboral- Una acusación por delito grave constituye justa causa para un despido.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Edwin González Santiago

    Recurrido

      v.                         CC-2017-0649

Baxter Healthcare of
Puerto Rico

    Peticionario


La Jueza Presidenta ORONOZ RODRÍGUEZ emitió la Opinión del Tribunal


En San Juan, Puerto Rico, a 25 de abril de 2019.

Nos corresponde resolver si la suspensión indefinida o por un periodo mayor a tres (3) meses de un empleado, a quien se le acusó de cometer varios delitos graves, constituyó un despido injustificado bajo la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, infra. Resolvemos que, bajo estas circunstancias y ante la intensidad del agravio, una suspensión que se prolonga por espacio mayor a tres (3) meses constituye un despido justificado, por tratarse de una decisión razonable para mantener el buen y normal funcionamiento de la empresa.

I

El Sr. Edwin González Santiago (señor González Santiago o empleado) comenzó a trabajar en Baxter

Healthcare Corporation (Baxter o patrono) el 24 de agosto de 1998. Al ingresar a la empresa recibió copia del *Manual de Reglas*, revisado en el 1993 (*Manual de 1993*)[1] y de las políticas de la compañía. Dicho manual se actualizó en el 2012 bajo el título *Manual del Empleado, Baxter Healthcare of Puerto Rico – Jayuya* (*Manual de 2012*).[2]

El 6 de julio de 2014 se presentaron siete (7) cargos, seis (6) por delitos graves y uno (1) por delito menos grave, en contra del señor González Santiago por actos lascivos y maltrato hacia una menor de trece (13) años. El 17 de julio de 2014 la Directora de Recursos Humanos de Baxter, Sra. Miriam Bayrón López (señora Bayrón López), se reunió con el señor González Santiago para corroborar una información sobre los hechos acontecidos. Esto, tras advenir en conocimiento de la radicación de cargos a través de las noticias, y porque se estaba comentando en la empresa. A esos efectos, el empleado le informó sobre el proceso criminal que había comenzado en su contra. Ese mismo día, se suspendió al señor González Santiago de empleo y sueldo por violación a la Regla 22 del *Manual de 2012*. La Regla 22 establece lo siguiente:

> Las Ofensas Mayores son aquellas que afectan adversamente la idoneidad de una persona como empleado de nuestra compañía, y por lo tanto, podrían conllevar la terminación de empleo en la primera ocasión. Algunos de los ejemplos de este tipo de Ofensas Mayores son: […] 22. Incurrir en

---

[1] *Baxter Healthcare Corporation of PR, Inc., Manual de Reglas,* revisado en el 1993 (*Manual de 1993*). Apéndice, pág. 191.
[2] *Manual del Empleado, Baxter Healthcare of Puerto Rico – Jayuya,* revisado en el 2012 (*Manual de 2012*). Apéndice, pág. 178.

delitos graves, y/o no informar sobre acusaciones o sentencias de delitos graves; de cualquier naturaleza incluyendo probatorias.[3]

El 4 de agosto de 2014, a solicitud del señor González Santiago, Baxter emitió una certificación que indicaba que este era empleado de la empresa, pero que no laboraba desde el 17 de julio de 2014.[4] Así las cosas, el 3 de octubre de 2014 el Estado presentó siete (7) acusaciones criminales contra el señor González Santiago- seis (6) por delitos graves y una (1) por un delito menos grave.[5]

El juicio criminal en contra del señor González Santiago se vio aproximadamente un (1) año después de su suspensión del empleo. El 17 de junio de 2015 el Tribunal de Primera Instancia dictó fallo de culpabilidad por los seis (6) cargos de delito grave y de no culpable por el cargo de delito menos grave.[6] El empleado luego le notificó a Baxter que había sido declarado culpable. El 25 de junio de 2015, Baxter le notificó por escrito su despido de la empresa.[7]

Por los hechos que anteceden, el señor González Santiago presentó una querella  por despido injustificado y

---

[3] Cabe destacar que al igual que el *Manual de 2012*, el *Manual de 1993* establece entre las *Ofensas Mayores* "21. Incurrir en delitos graves, o menos graves que impliquen fallas fundamentales de carácter" y "23. Conducta ofensiva a la decencia y la moral pública". Apéndice, pág. 180.
[4] Apéndice, pág. 277.
[5] Específicamente, se le acusó de maltrato en violación al Art. 58 de la Ley Núm. 246-2011, conocida como la Ley para la Seguridad, Bienestar y Protección de Menores, 8 LPRA sec. 1174, (delito grave), de actos lascivos en contra de una víctima menor de dieciséis (16) años de edad en violación al Art. 133 del Código Penal de Puerto Rico (Código Penal), 33 LPRA sec. 5194, (delito grave) y de prostitución en violación al Art. 138 del Código Penal, 33 LPRA sec. 5199 (delito menos grave). Apéndice, págs. 195-206.
[6] Apéndice, pág. 278.
[7] Apéndice, pág. 31.

discrimen por edad en contra de Baxter al amparo del procedimiento sumario laboral provisto por la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 et seq.[8]

En esencia, el señor González Santiago alegó que mientras era empleado de Baxter se le acusó de varios delitos graves. Añadió que, a pesar de ello, el tribunal le permitió estar en libertad bajo supervisión electrónica y que tanto el tribunal como la Oficina de Servicios con Antelación al Juicio (OSAJ) lo autorizaron a continuar trabajando.[9] Además, arguyó que mantuvo informado de la acusación criminal a su supervisor inmediato. No obstante, indicó que su patrono advino en conocimiento del proceso criminal en su contra, por lo que lo suspendió de empleo y sueldo por un término indefinido. Expresó que estuvo suspendido más de tres (3) meses, lo que configuró un despido injustificado en violación a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de Indemnización por Despido sin Justa Causa, 29 LPRA sec. 185a et seq. (Ley Núm. 80).[10] Además, alegó discrimen por razón de edad en violación a lo dispuesto en la Ley Núm. 100 de 30 de junio de 1946, según

---

[8] *Querella*. Apéndice, págs. 1-4.
[9] Íd., pág. 2.
[10] Íd., págs. 2-3. La Ley Núm. 4-2017, 29 LPRA secs. 121 et seq, conocida como la Ley de transformación y flexibilidad laboral enmendó recientemente la Ley Núm. 80. Las enmiendas que allí se incluyen no son pertinentes para la resolución de este caso, debido a que los hechos ocurrieron previo a su aprobación y estas son de carácter prospectivo. Véase Art. 1.2, Ley Núm. 4-2017, 29 LPRA sec. 121a. Cónsono con lo anterior, en esta Opinión haremos referencia al estado de Derecho vigente a la fecha de los hechos de este caso.

enmendada, conocida como la Ley contra el Discrimen en el Empleo, 29 LPRA sec. 146 et seq. A esos efectos, planteó únicamente que desde su despido hasta la fecha en que se presentó la querella otro empleado, de menor edad y con menos tiempo en la empresa, ejerció sus funciones.

El patrono contestó la querella y negó las alegaciones sobre despido injustificado y discrimen por edad. Señaló que se acusó criminalmente al señor González Santiago por varios cargos de actos lascivos,[11] pero que desconocía que este estuviera bajo supervisión electrónica (con grillete) mientras laboró en la compañía. Añadió que el empleado nunca le comunicó a su supervisor las particularidades de su caso, pues solo solicitó ausentarse varios días para atender un proceso legal.[12] Además, indicó que una vez advino en conocimiento del proceso penal inició una investigación, citó al empleado el 17 de julio de 2014 y, tras una entrevista, determinó suspenderlo de empleo y sueldo.

De igual forma, alegó que su determinación se fundamentó en las normas y procedimientos de Baxter que permiten el despido por la primera ofensa en el caso de las *Ofensas Mayores*,[13] y que también le permiten la suspensión de empleo y sueldo mientras se investiga y evalúa el caso.[14] Particularmente, señaló que el despido fue justificado toda vez que el señor González Santiago violentó su normativa

---

[11] *Contestación a la Querella*. Apéndice, pág. 12.
[12] Íd., pág. 13.
[13] *Manual de 2012*. Apéndice, pág. 178.
[14] Íd., pág. 185.

catalogada como *Ofensas Mayores*, al incurrir en delitos graves y/o no informar sobre acusaciones o sentencias de delitos graves de cualquier naturaleza (Ofensa mayor #22) y realizar conductas ofensivas a la decencia y la moral pública (Ofensa Mayor #29).[15] En fin, concluyó que el despido del señor González Santiago no fue arbitrario, caprichoso o no relacionado al buen y normal funcionamiento de la empresa, y que, por el contrario, fue justificado al este ser acusado y declarado culpable en contravención a su normativa.[16]

Tras varios trámites procesales, ambas partes solicitaron que se dictara sentencia por las alegaciones. Examinadas las mismas, el foro primario las denegó por considerar que existían elementos subjetivos de credibilidad que debían dilucidarse en un juicio en su fondo.[17] Por consiguiente, ordenó a las partes a que sometieran el informe preliminar de conferencia con antelación al juicio. Posteriormente, Baxter presentó una *Moción de sentencia sumaria* y alegó que, aun reconociendo que la suspensión indefinida o de más de tres (3) meses configuró un despido, el patrono, como en todo despido, puede demostrar que ocurrió por justa causa.[18] Adujo que suspendió al empleado mientras se ventiló el caso criminal en su contra y que la duración de la suspensión era atribuible al trámite judicial, que incluyó la celebración de un juicio. Concluyó que la

---

[15] Íd., pág. 180.
[16] *Contestación a la Querella*. Apéndice, págs. 7 y 18.
[17] *Resolución*. Apéndice, pág. 72.
[18] *Moción de sentencia sumaria*. Apéndice, pág. 118.

suspensión fue correcta y que el despido subsiguiente, una vez un tribunal lo halló culpable, fue razonable.[19] En cuanto a las alegaciones de discrimen por razón de edad, sostuvo que el señor González Santiago no estableció un caso *prima facie* ya que su despido fue justificado. En particular, indicó que su reclamación era improcedente porque nunca se quejó de trato discriminatorio y que su despido respondió a que violó las normas de conducta de la empresa.[20]

El señor González Santiago presentó una oposición y solicitó que se dictara sentencia sumaria a su favor. Argumentó que cuando comenzó a trabajar en el 1998 solo recibió el *Manual de 1993*,[21] y que nunca recibió la versión revisada de 2012.[22] Enfatizó, además, que Baxter no consideró la presunción de inocencia que lo cobijaba al suspenderlo de empleo y sueldo.[23] Añadió que el patrono se basó exclusivamente en la impresión que podía causar el que fuera culpable de actos lascivos. A esos efectos expresó: "[p]udo ser de asesinato y podía o no lo podía suspender de empleo y sueldo por tiempo indeterminado y/o por más de 90 días. Para poderlo suspender de esa manera […] tenían que pagar su

---

[19] Íd., págs. 118-119.

[20] Íd., pág. 123.

[21] Como mencionamos, este manual define las *Ofensas Mayores* como "aquellas que afectan adversamente la idoneidad de una persona como empleado de [la compañía], y[,] por lo tanto, podrían conllevar la terminación del empleo en la primera ocasión". *Manual de 1993*. Apéndice, pág. 191. Así también, enumera ejemplos de ese tipo de ofensa, entre las que se encuentran: "21. Incurrir en delitos graves, o menos graves que impliquen fallas fundamentales de carácter" y "23. Conducta ofensiva a la decencia y la moral pública". Íd., págs. 192-193.

[22] *Oposición a sentencia sumaria y a su vez solicitud de sentencia sumaria parcial a favor del querellante*. Apéndice, pág. 353.

[23] Íd., pág. 361.

mesada y no lo hicieron".[24]

El Tribunal de Primera Instancia declaró con lugar la solicitud de sentencia sumaria del empleado. En su evaluación, el foro primario tomó en consideración las deposiciones del señor González Santiago y de la señora Bayrón López. A base de estas, y del informe preliminar de conferencia con antelación al juicio, consignó los hechos estipulados como determinaciones de hechos. En atención a ello, concluyó que Baxter despidió al señor González Santiago injustificadamente, en contravención al Art. 5 de la Ley Núm. 80, 29 LPRA sec. 185e, cuando lo suspendió de empleo y sueldo por tiempo indefinido y/o por el término de más de tres (3) meses. El tribunal enfatizó que Baxter, al momento de suspender al empleado, no generó un documento que estableciera la razón para ello ni tomó en consideración su derecho a la presunción de inocencia. Específicamente expresó: "[e]n ese punto es bien relevante establecer que a Don Edwin le cobija el derecho a la presunción de inocencia y el derecho al trabajo, ambos de rango constitucional".[25]

En consecuencia, condenó al patrono a satisfacer el pago de $34,365.60 por concepto de mesada más $5,154.84 por concepto de honorarios de abogado, para un total de $39,520.44, sujeto al interés legal de 4.50%.[26]

---

[24] Íd., pág. 363.
[25] *Sentencia* del Tribunal de Primera Instancia. Apéndice, pág. 392.
[26] Por otro lado, el foro primario declaró no ha lugar la reclamación de discrimen por edad, ya que el empleado no activó la presunción. Íd., pág. 395.

Inconforme, Baxter recurrió ante el Tribunal de Apelaciones. Alegó que el foro primario erró al determinar que el despido fue injustificado y concluir que el derecho a la presunción de inocencia aplica a las determinaciones de despido en el ambiente laboral. Reiteró que incurrir en delito grave de actos lascivos contra una niña de trece (13) años de edad era algo "totalmente intolerable que una sociedad civilizada no [podía] permitir".[27] Por tanto, sostuvo que debido a esa norma social resultaba evidente que el despido fue justificado. A su vez, alegó que el derecho a la presunción de inocencia solo aplica contra el estado y no a las acciones de un patrono contra un empleado.[28]

El Tribunal de Apelaciones confirmó al foro primario. Resolvió que el patrono no le proveyó al empleado una copia del *Manual de 2012*, por lo que no se le notificaron debidamente las normas que debía cumplir. Al mismo tiempo, determinó que el *Manual de 2012* no contenía un protocolo para que el empleado notificara las acusaciones. Así, entendió que el patrono no rebatió la presunción de despido injustificado. En lo relativo a la presunción de inocencia, el foro apelativo intermedio concluyó que el foro primario no determinó que ese derecho aplica al ámbito laboral. Esbozó que, aunque el Tribunal de Primera Instancia aludió a que al empleado le cobijaba ese derecho al momento de la suspensión, no se basó en ello al emitir su determinación.[29]

---

[27] *Apelación*. Apéndice, págs. 418-419.
[28] Íd., pág. 424.
[29] *Sentencia* del Tribunal de Apelaciones. Apéndice, pág. 440.

Aún en desacuerdo, Baxter presentó un recurso de *certiorari* ante este Foro. Insistió en los señalamientos de error que argumentó ante el foro apelativo intermedio. Expedimos el recurso en reconsideración y, con el beneficio de los alegatos de ambas partes, resolvemos.

II

A. *Sentencia sumaria*

La moción de sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. Rodríguez Méndez v. Laser Eye, 195 DPR 769, 785 (2016); Oriental Bank v. Perapi, 192 DPR 7, 25 (2014). Procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto a hechos materiales, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho. Íd.

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, establece cuándo se puede dictar sentencia sumaria. Esto es, si las alegaciones, deposiciones, y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material. Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 225 (2015); SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 430 (2013). Consecuentemente, se permite disponer de asuntos sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. Íd.

Es menester destacar que nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. A tal efecto, nuestra revisión es una *de novo*, y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. Así, si encontramos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho. Meléndez González et al. v. M. Cuebas, 193 DPR 100, 118 (2015).

B. *Ley de indemnización por despido sin justa causa*

La Ley Núm. 80 se estableció para desalentar la incidencia de despidos injustificados y otorgar remedios más justicieros cuando estos ocurren. Ante el reclamo de un empleado por su despido al amparo de la Ley Núm. 80, el patrono puede plantear la defensa de justa causa, a partir de los criterios que ofrece este estatuto en su Art. 2, 29 LPRA sec. 185b. El Art. 2 de la referida ley establece que un patrono podrá despedir por justa causa a un empleado, entre otras razones, si incurre en un patrón de conducta impropia o desordenada, así como por violaciones reiteradas a las reglas y reglamentos razonables establecidos para el funcionamiento de la empresa, siempre que se le haya suministrado copia escrita de los mismos. Íd. Este Tribunal ha señalado, sin embargo, que la Ley Núm. 80 no es un código de conducta que establece una lista de faltas definidas o taxativas, ya que "no pretende, ni puede, considerar la

variedad de circunstancias y normas de los múltiples establecimientos de trabajo…". <u>SLG Torres-Matundan v. Centro Patología</u>, 193 DPR 920 (2015); <u>Srio. del Trabajo v. G.P. Inds., Inc.</u>, 153 DPR 223, 243 (2001).

Por esa razón, un patrono puede adoptar los reglamentos y las normas razonables que estime necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. <u>Jusino et als. v. Walgreens</u>, 155 DPR 560, 573 (2001). Ante ello, hemos establecido que "[c]uando un patrono despide a un empleado por una causal no enumerada en la Ley Núm. 80, nuestro análisis para determinar si esta constituye justa causa se basa en el principio rector de la Ley Núm. 80, contenido en el segundo párrafo de su Art. 2, supra." <u>SLG Torres-Matundan v. Centro Patología</u>, <u>supra</u>, pág. 931. En este se establece lo siguiente: "No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b.

Además, este Tribunal reconoció desde <u>Srio. del Trabajo v. I.T.T.</u>, 108 DPR 536, 542 (1979), que el despido como sanción por la primera falta podría considerarse justificado. Esto es, si el acto o falta que da pie al despido es **"de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa"**. <u>Feliciano Martes v. Sheraton</u>,

182 DPR 368, 383 (2011), citando a <u>Srio. del Trabajo v. I.T.T.</u>, <u>supra</u>, pág. 544. (énfasis suplido). Es decir, que "…**por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio.** En acciones de este tipo, por lo tanto, **constituiría una imprudencia esperar su reiteración para despedir al empleado**". <u>Rivera v. Pan Pepín</u>, 161 DPR 681, 690 (2004); <u>Delgado Zayas v. Hosp. Int. Med. Avanzada</u>, 137 DPR 643, 650 (1994); <u>Srio. del Trabajo v. I.T.T.</u>, <u>supra</u>, pág. 544. (énfasis suplido).

Esta norma ha sido reiterada en varias ocasiones ante distintas faltas.[30] Por ejemplo, en <u>SLG Torres-Matundan v. Centro Patología</u>, <u>supra</u>, pág. 936, se validó un despido ante una amenaza y agresión que ocurrió en el lugar de trabajo con respecto a una empleada que estaba embarazada. En <u>Delgado Zayas v. Hosp. Int. Med. Avanzada</u>, <u>supra</u>, pág. 659, determinamos que fue justificado el despido de un empleado que incurrió en hostigamiento sexual, a pesar de ser la

---

[30] Los comentarios contenidos en la *Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada*, del Departamento del Trabajo y Recursos Humanos de Puerto Rico, aprobada el 30 de junio de 2014, disponen lo siguiente con respecto a las primeras faltas que pueden dar base al despido justificado:

> En circunstancias especiales, ciertos actos aislados pueden revestir tal seriedad que pueden dar base al despido justificado ya que pueden poner de manifiesto una clara e indubitable condición de carácter, que por la gravedad de las consecuencias que hayan acarreado o que puedan acarrear, o por revelar, de por sí, una actitud no susceptible de cambio, ponen de relieve, desde ese momento, aquella configuración del carácter que el legislador sabiamente exigió, como norma general, que no se dejase depender en su apreciación de un acto aislado del empleado. Así[,] por ejemplo, el trabajador que agreda a su patrono sin provocación o justificación, de por sí solo, puede dar lugar al despido justificado. <u>Íd.</u>, pág. 46.

primera falta. Por su parte, en <u>Miranda Ayala v. Hosp.</u> <u>San Pablo</u>, 170 DPR 734 (2007), se consideró justificado el despido por apropiación indebida de propiedad de un hospital, al llevarse a su casa dos cajas de cerveza.

Adicionalmente, hemos pautado que el patrono "tiene derecho a evaluar a su personal, a base de los valores morales y de orden público prevalecientes en Puerto Rico, de conocimiento general en nuestra sociedad, cuando el cumplimiento o violación de éstos puede mantener o alterar el buen y normal funcionamiento de la empresa." <u>Srio. del</u> <u>Trabajo v. GP Inds., Inc.</u>, <u>supra</u>, pág. 246. En consecuencia, se ha determinado que la conducta que infringe este tipo de valores justifica el despido en la primera ocasión **"aunque ella no haya sido prevista en las reglas y los reglamentos de la empresa, [y sea una] falta cuya intensidad de agravio así lo requiera, para proteger el normal y buen funcionamiento de la empresa"**. (Énfasis nuestro). <u>Íd</u>. Es decir, "una persona de inteligencia normal tiene que saber que asesinar a otro empleado en el lugar de trabajo, agredir físicamente al patrono sin razón alguna que justifique este hecho, hurtar mercancía del patrono ... constituyen faltas mayores o graves [en las] que no debe incurrir nunca." A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, 7ma ed., San Juan, 2001, pág. 138. Por tanto, resultaría en un absurdo que la Ley pretendiera que este tipo de faltas se incluyan como conducta prohibida en el reglamento o manual de disciplina de la empresa y que ante

una primera ocurrencia se requiera una amonestación y la repetición de la falta para que se pueda realizar entonces un despido justificado. Íd.

Por último, para propósitos de este caso, es necesario examinar el Art. 5 de la Ley Núm. 80, el cual establece que:

> A los efectos de las secs. 185a a 185m de este título **se entenderá por despido, además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses**, excepto en el caso de empleados de industria y negocios estacionales o la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. (Énfasis nuestro). Art. 5 de la Ley Núm. 80, 29 LPRA sec. 185e.

A la luz de este marco jurídico, resolvemos.

III

Baxter sostiene que los foros inferiores erraron al determinar que el despido del empleado fue injustificado. Tiene razón.

Al examinar la sentencia sumaria que emitió el foro primario, resulta forzoso concluir que no está en controversia: 1) que al señor González Santiago se le presentaron cargos por actos lascivos; 2) que a raíz de esos cargos se le suspendió de empleo y sueldo; 3) que posteriormente se presentaron siete (7) acusaciones criminales en su contra; 4) que un tribunal lo declaró culpable de las seis (6) acusaciones por delitos graves;

5) que el señor González Santiago conocía que su conducta se consideraba una falta mayor, y 6) que tras conocer del fallo de culpabilidad, el patrono le notificó su despido. Ante estos hechos incontrovertidos, el foro primario aplicó incorrectamente el Derecho. Veamos.

En primer lugar, la sentencia del Tribunal de Primera Instancia concluyó erróneamente que no se justificaba la suspensión del señor González Santiago pues a este le cobijaba la presunción de inocencia.[31] Sin embargo, es norma reiterada que la presunción de inocencia solo aplica en los procesos criminales y no se extiende al ámbito laboral.[32] Según nuestro Derecho Constitucional se le "garantiza a

---

[31] Véase *Sentencia* Tribunal de Primera Instancia. Apéndice, págs. 382-384, 392-393.

[32] Destacamos que el Tribunal de Apelaciones para el Primer Circuito ha determinado que la presunción de inocencia no se extiende a las controversias laborales. En Defazio v. Delta Air Lines,Inc., 34 F.3d 1065 (1st Cir. 1994), en un caso por despido de un empleado acusado de delito, se resolvió lo siguiente:

> Appellant asserts that his dismissal violated the state policy which presumes an accused to be innocent until proven guilty. **This presumption, however**, serves to focus a jury on what a prosecutor must establish so as to obtain a conviction in a criminal case. Commonwealth v. Boyd, 367 Mass. 169, 188, 326 N.E.2d 320, 332 (1975). **It has no applicability in the employment context** and, consequently, does not warrant invocation of the public policy exception.

Defazio v. Delta Air Lines,Inc., supra, citando a Borschel v. City of Perry, 512 N.W.2d 565, 566-567 (Iowa 1994), un caso en el que se despidió a un policía luego de que se le presentaron cargos por abuso sexual de un menor y se sostuvo que la presunción de inocencia no aplicaba al contexto laboral. En dicho caso, el Tribunal determinó que no procedía la causa de acción del empleado por despido injustificado. ("The statutory presumption of innocence […] requires a person's guilt be proven beyond a reasonable doubt in criminal proceedings. […] **We do not believe this statute implies a public policy applicable in the employment context. While a defendant charged with a crime is presumed innocent until proven guilty, this right is limited to criminal proceedings.** We reject Borschel's contention that the right of due process combined with the presumption of innocence express a well-recognized and defined public policy of Iowa. We therefore agree with the district court that Borschel has no cause of action based on wrongful termination".)(citas omitidas) (Énfasis suplido).

todos los ciudadanos el derecho fundamental a la presunción de inocencia **en todo proceso criminal**". Pueblo v. Santiago, 176 DPR 133, 142 (2009)(énfasis suplido); véase Art. II, Sec. 11, Const. PR, LPRA, Tomo 1. A esos efectos, nuestro esquema procesal penal reconoce la presunción de inocencia, específicamente en la Regla 110 de Procedimiento Criminal, la cual dispone que "**[e]n todo proceso criminal**, se presumirá inocente el acusado mientras no se probare lo contrario […]." 34 LPRA Ap. II, R. 110 (énfasis suplido).

En segundo lugar, los foros inferiores erraron al determinar que no se consideraba justificada la suspensión y eventual despido del señor González Santiago. Específicamente, el foro apelativo intermedio concluyó erróneamente que violentar una de las normas incluidas en el *Manual de 2012* no podía constituir justa causa para el despido. Ello, porque el empleado alegadamente no recibió copia del mismo y además era irrazonable pues no contenía un protocolo formal para que los empleados notifiquen sobre acusaciones de delito. Por los fundamentos que expondremos a continuación, entendemos que estas conclusiones son contrarias al derecho vigente. [33]

---

[33] Cabe mencionar que de los hechos surge que desde el 1998, cuando el señor González Santiago comenzó a trabajar en Baxter, se le notificó el manual que estaba vigente, a saber, el *Manual de 1993*. Desde ese momento este conocía que su conducta estaba vedada y que constituía una *Ofensa Mayor* que justificaba la terminación del empleo en la primera ocasión. En el *Manual de 1993* también surge claramente que "[c]ada empleado debe entender que está sujeto a otras normas de conducta que aun cuando no estén escritas resultan razonables y necesarias para mantener el funcionamiento de nuestras operaciones". Apéndice, pág. 191. Esa conducta también estaba proscrita en el *Manual de 2012.*

Como mencionamos, es un hecho incontrovertido que al empleado se le acusó de seis (6) delitos graves por actos lascivos contra una menor de trece (13) años de edad y que posteriormente se le declaró culpable por dicha conducta. Claramente la naturaleza de los delitos implica una falla grave de carácter del empleado y una conducta ofensiva a la decencia y a la moral pública.

Por tanto, no resulta necesario dirimir las controversias relacionadas a los manuales de Baxter, ya que estamos ante una falta cuya intensidad de agravio justifica el despido en la primera ocasión. Según expusimos, no resulta necesario incluir en un reglamento o manual de disciplina ciertas normas cuya violación constituye una falta mayor, toda vez que todo empleado conoce que existen conductas que constituyen faltas mayores o graves en las que no debe incurrir nunca.

No hay duda de que una acusación criminal por el delito grave de actos lascivos contra una menor de edad, por su seriedad y potencial de agravio, pone en riesgo la seguridad, el orden y la eficiencia que constituyen el buen funcionamiento de un negocio. Rivera v. Pan Pepín, supra, pág. 690; Srio. del Trabajo v. GP Inds., Inc., supra, pág. 246; Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, pág. 650.

En síntesis, las acusaciones de delito grave en contra del señor González Santiago justificaban su despido y nada en nuestro ordenamiento legal exigía que Baxter, en un

proceso laboral, presumiera su inocencia tras conocer que el Estado había iniciado un procedimiento criminal en su contra. Igual ocurre con la posterior convicción por esos delitos graves.

En vista de lo anterior, los tribunales inferiores erraron al determinar que la conducta y violación de la normativa por parte del señor González Santiago no justificaban el despido como sanción por la primera falta. Exigirle al patrono que mantuviese al empleado en sus labores, independientemente de la etapa en la que se encontraba el procedimiento criminal, sería imponerle una carga irrazonable. A su vez, crearía un ambiente de inestabilidad en el área laboral y entre sus compañeros, que no son ajenos al reproche social que acarrea ese tipo de conducta. Una acusación por delito grave como la del caso de autos infringe valores de orden público en nuestra sociedad y mantener en funciones al empleado afectaría el buen y normal funcionamiento de la empresa.

Por último, destacamos que el patrono, a pesar de que podía despedirlo una vez se presentaron las acusaciones, decidió válidamente aplicar una sanción menor y suspender al empleado como medida provisional mientras se ventilaba el procedimiento criminal en su contra. En este caso, debido a que el proceso criminal se prolongó por un espacio mayor a tres (3) meses, la suspensión se convirtió en un despido. No obstante, según lo expuesto, el despido se considera

justificado por tratarse de una decisión razonable para mantener el buen y normal funcionamiento de la empresa.

En consideración a lo anterior, disponemos que la actuación de Baxter, al suspender y luego despedir al empleado, fue razonable y justificada.

IV

Por los fundamentos que anteceden, se revoca la *Sentencia* del Tribunal de Apelaciones y se desestima la demanda.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edwin González Santiago

    Recurrido

       v.                       CC-2017-0649

Baxter Healthcare of Puerto Rico

    Peticionario


SENTENCIA

En San Juan, Puerto Rico, a 25 de abril de 2019.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la *Sentencia* del Tribunal de Apelaciones y se desestima la demanda.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente. El Juez Asociado señor Kolthoff Caraballo no intervino.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edwin González Santiago<br><br>Recurrido<br><br>v.<br><br>Baxter Healthcare of Puerto Rico<br><br>Peticionario | CC-2017-0649 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 25 de abril de 2019.

Disiento del dictamen mayoritario, pues opino que un empleado no puede ser despedido **automáticamente** porque sea acusado de cometer un delito. Ello, debido a que el patrono tiene el peso de la prueba de demostrar que la acusación criminal afectó el buen y normal funcionamiento de su empresa. En consecuencia, entiendo que la controversia ante nuestra consideración exigía un análisis integrado de los posibles efectos de la conducta impugnada en la marcha de la empresa. Al determinar lo contrario, la Opinión mayoritaria valida el ejercicio arbitrario y caprichoso de privar a personas de su sustento económico sin la debida justa causa. Veamos brevemente los fundamentos para mi disenso.

I

Como es conocido, nuestro ordenamiento cuenta con una política pública dirigida a promover y proteger la seguridad del empleo. Rivera v. Pan Pepín, 161 DPR 681, 688 (2004). En ese sentido, la Asamblea Legislativa materializó esa política en varias legislaciones protectoras de los derechos de los trabajadores, entre ellas la Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq. (ed. 2017) (Ley Núm. 80). Debido al importante propósito reparador de estos estatutos, los mismos deben interpretarse de la manera más liberal y favorable al empleado. Belk v. Martínez, 146 DPR 215, 232 (1998).

Entre varios asuntos, la Ley Núm. 80 exige que todo despido de empleados sea por justa causa. Art. 2 de la Ley Núm. 30, supra, 29 LPRA sec. 185b. Si, por el contrario, el patrono despide a un empleado sin justa causa, éste debe indemnizar al empleado conforme a lo dispuesto en el Art. 1 de la Ley Núm. 30, supra, 29 LPRA sec. 185a. Para ello, el estatuto establece una presunción de que todo despido de un empleado es injustificado. Art. 8 de la Ley Núm. 80, supra, 29 LPRA sec. 185k. En consecuencia, el patrono tiene el peso de la prueba para demostrar que el despido fue por justa causa. Báez García v. Cooper Labs., Inc., 120 DPR 145, 152 (1987).

En ese sentido, la Ley Núm. 80 precisa algunas de las situaciones y faltas que se consideran justa causa para despedir un empleado. Art. 2 la Ley Núm. 80, supra, 29 LPRA sec. 185b. Entre éstas, se encuentran: un patrón de conducta impropia,

violación de las normas de conducta de la empresa, cierre de las operaciones, entre otras. Íd. Sin embargo, la referida lista no es taxativa ni "pretende ser un código de conducta limitada". Rivera v. Pan Pepín, supra, pág. 689. Por tal razón, el patrono tendrá justa causa para despedir a un empleado por faltas y circunstancias, no previstas en la Ley Núm. 80, siempre y cuando muestre que las mismas están **razonablemente relacionadas** con el "buen y normal funcionamiento de la empresa". Art. 2 de la Ley Núm. 30, supra, 29 LPRA sec. 185b; Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 246 (2001).

Debido a lo anterior, la responsabilidad de los tribunales ante circunstancias no contempladas expresamente en la Ley Núm. 80 es determinar si éstas constituyen justa causa para despido. Como expusimos anteriormente, el principio rector en esa encomienda es determinar si la conducta exhibida por el empleado afecta "el buen y normal funcionamiento del establecimiento". Art. 2 la Ley Núm. 80, supra, 29 LPRA sec. 185b.

**II**

En la controversia ante nuestra consideración, el Sr. Edwin González Santiago (señor González Santiago) fue **acusado** de cometer los delitos de actos lascivos y maltrato en contra de una adolescente. A raíz de ello, su patrono Baxter Healthcare Corporation (Baxter), lo suspendió indefinidamente y sin sueldo hasta tanto culminara el procedimiento criminal en su contra. Según surge de las determinaciones de hecho del Tribunal de

Primera Instancia, la suspensión se debió a la "naturaleza de las acusaciones".[34]

Aproximadamente un año luego de la suspensión, el señor González Santiago fue declarado culpable y prontamente despedido definitivamente por Baxter. Debido a lo anterior, el señor González Santiago demandó a Baxter y alegó que fue despedido injustificadamente.

Como reconoce la Opinión mayoritaria, la suspensión indefinida del señor González Santiago se extendió por un período mayor de tres meses. La Ley Núm. 80 establece expresamente que "se entenderá por despido, además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses". Art. 5 de la Ley Núm. 80, supra, 29 LPRA sec. 185e. Debido a que la suspensión del señor González Santiago se extendió por un período de un año aproximadamente, la misma se considera un despido. Ante ello, procede determinar si, en las circunstancias ante nuestra consideración, la acusación en contra del señor González Santiago constituye justa causa para su despido. Por entender que Baxter no probó ese requisito estatutario, opino que al señor González Santiago le asiste la razón.

A pesar de ello, la Opinión mayoritaria resuelve que el despido del señor González Santiago fue justificado, pues la acusación en su contra laceró el buen y normal funcionamiento de la empresa. Sin embargo, un estudio del expediente revela que Baxter no demostró, mediante prueba alguna, que ello fue así. Al

---

[34]Apéndice del certiorari, pág. 380.

contrario, estamos ante un expediente huérfano de prueba para apoyar tal conclusión.

Baxter alegó, sin más, que los delitos por los cuales el señor González Santiago fue acusado son "intolerables" y que una "sociedad civilizada" no los puede permitir.[35] Baxter sostuvo que "[d]ebido a esa norma social, resulta evidente que Baxter estaba en todo su derecho de prohibir conducta relacionada a tal acto".[36] Durante el extenso litigio ante nuestra consideración, Baxter no expuso de manera alguna si la acusación al señor González Santiago laceró sus operaciones, si afectó el ambiente laboral entre empleados o si generó algún efecto adverso en el establecimiento. Mediante un análisis autómata y formalista, Baxter insistió únicamente en la ilegalidad de la alegada conducta del señor González Santiago. De esta manera, no mostró nexo ni relación alguna entre las acusaciones al señor González Santiago y su capacidad de ejercer sus labores en Baxter o cómo se afectó el funcionamiento de la empresa.

Por más repudiables que sean los delitos que originaron esta controversia laboral, Baxter tenía el peso de la prueba de demostrar cómo la acusación del señor González Santiago afectaba el buen y normal funcionamiento de la empresa. La mera acusación de la comisión de un delito no basta. El andamiaje laboral desarrollado en nuestro ordenamiento va precisamente dirigido a evitar que el despido de los empleados sea mediante un ejercicio automático y rígido. Para ello, exige que las causas de un despido estén razonablemente relacionadas a la buena marcha de

---

[35] Petición de certiorari, pág. 19

[36] Íd.

un empleo y que no sean el producto del arbitrio o capricho del patrono. Por tanto, "[e]l elemento delictivo de esta conducta no basta para constituir causa de despido. Es necesaria una **relación directa** con el lugar de trabajo. De otro modo, se le estarían concediendo al patrono facultades punitivas que no le corresponden, pues son de la exclusiva competencia del Estado." (Énfasis suplido). Srio. del Trabajo v. G.P. Inds., Inc., supra, págs. 259-260 (Hernández Denton, J., Opinión disidente). En consecuencia, este Tribunal no debió validar que el señor González Santiago fuese despedido sin indemnización alguna únicamente por ser acusado en un procedimiento criminal.

Además, es menester destacar que la Opinión mayoritaria fundamenta su decisión en jurisprudencia en la que este Tribunal determinó que las faltas cometidas por los empleados eran de tal gravedad y seriedad que ameritaban el despido inmediato como primera sanción. Sin embargo, distinto a lo ocurrido en la controversia ante nuestra consideración, la referida jurisprudencia trata sobre conducta delictiva de empleados que estaba **relacionada directamente con el desempeño de sus labores y con el funcionamiento de la empresa**. En los mismos, este Tribunal determinó que es justa causa para despido actos de agresión, apropiación ilegal y hostigamiento sexual en el lugar de trabajo. SLG Torres-Matundan v. Centro Patología, 193 DPR 920 (2015); Miranda Ayala v. Hosp. San Pablo, 170 DPR 734 (2007) (Sentencia); Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643 (1994).

Ciertamente, no hay duda de que la comisión de actos constitutivos de delito en el lugar de trabajo puede tener

consecuencias palpables e inmediatas en la marcha de un negocio. Como puede apreciarse, la jurisprudencia reseñada está dirigida a sancionar aquella conducta que tiene una relación directa con el desempeño y funcionamiento de la empresa.

Sin embargo, las acusaciones en contra del señor González Santiago se basaron en actos delictivos alegadamente ocurridos fuera del lugar de trabajo. Por tal razón, Baxter tenía que demostrar alguna relación entre la conducta delictiva y los efectos, si algunos, que generó en las labores de su empresa. Al resolver lo contrario, se presume automáticamente que toda persona acusada de delito es incapaz de trabajar. Una interpretación tan amplia es contraria a nuestra política pública protectora de los derechos de los trabajadores.

### III

En fin, el procedimiento de despido de un empleado necesariamente conlleva privar a una persona de su sustento económico y, en muchos casos, de su acceso a servicios indispensables. Por tal razón, nuestro ordenamiento exige que el patrono demuestre, mediante preponderancia de la prueba, justa causa para despedir a un empleado. Sin embargo, Baxter **no proveyó prueba alguna** a esos efectos. Al contrario, se sostuvo únicamente en la alegación de actos delictivos cometidos fuera del ámbito laboral. Ante ello, este Tribunal debió ordenar la indemnización correspondiente a un despido injustificado.

No obstante, la Opinión mayoritaria validó esta práctica y no contempló ni analizó qué riesgos y efectos, si algunos, podía representar la acusación en contra del señor González Santiago en el contexto y en las circunstancias específicas de sus labores

en Baxter. Por tanto, mediante este automatismo, se equipara al obrero que se encuentra trasbastidores elaborando un producto, con el vendedor que representa la imagen corporativa de la empresa. Resulta incuestionable que el grado en que se afecta una empresa es muy distinto, dependiendo cuál de los diversos recursos humanos resulte acusado.

Así, la Opinión mayoritaria obvia las normas de nuestro ordenamiento y se aleja de la tendencia en otras jurisdicciones. A modo de ejemplo, en jurisdicciones de los Estados Unidos tradicionalmente se ha adoptado un "nexus test" o "nexus requirement" en casos donde el patrono sanciona "off-duty conduct" o conducta del empleado fuera del ámbito laboral. R. A. Kearney, Arbitral Practice and Purpose in Employee Off-Duty Misconduct Cases, 69 Notre Dame L. Rev. 135, 137 (1993). Mediante el "nexus test", se examina la relación y el nexo causal entre la conducta impugnada del empleado y el funcionamiento de la empresa del patrono. Si la conducta del empleado no genera un efecto adverso en la marcha del negocio, frecuentemente se presume que el despido fue inválido.

Asimismo, en New York y Hawaii se han aprobado legislaciones que tienen como propósito proteger a los exconvictos de ser discriminados en la búsqueda de empleos. E. J. Rivera Juanatey, Discrimen por antecedentes penales: Hacia una reconsideración del discrimen por condición social, 41 Rev. Jur. UIPR 585, 605-607 (2007). Las mismas proveen, entre otros asuntos, que los patronos no pueden discriminar en contra de personas convictas si los delitos cometidos no guardan relación con las labores de la empresa. Similarmente, en Rosario Díaz v.

Toyota, 166 DPR 1 (2005) (Sentencia), se favoreció la práctica de que el patrono que considere solicitudes de empleo de parte de personas ex convictas debe evaluar una serie de factores, entre ellos el efecto que tendría la contratación en el interés propietario del patrono. Íd., pág. 28 (Rebollo López, J., Opinión de conformidad). Como puede apreciarse, el requerimiento de nexo causal entre el delito cometido y la naturaleza de las labores de un empleo ha demostrado ser muy útil al adjudicar controversias de esta naturaleza. Asimismo, ayuda a descartar la presunción de que una persona acusada y, hasta convicta, de delito es incapaz de reinsertarse como un miembro productivo de la sociedad.

En consecuencia, me parece desacertado que, ante estos adelantos, validemos un despido automáticamente por una acusación de un delito, sin el debido ejercicio y evaluación de los posibles efectos, si algunos, que podría tener la misma en el desempeño de un empelado en sus labores y en el buen funcionamiento de una empresa. Desafortunadamente, mediante la Opinión mayoritaria, se permite una práctica que redunda precisamente en los despidos automáticos e injustificados que la Asamblea Legislativa ha intentado regular. **Hoy, se validó que el estigma de la acusación sea, por sí sólo, justa causa para despido.** Por tales razones, disiento del dictamen mayoritario.

Luis F. Estrella Martínez<br>Juez Asociado