Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JULIO A. VEGA PACHECO<br><br>Apelante<br><br>v.<br><br>VIEQUES AIR LINK, INC.;<br>ASEGURADORA ABC<br><br>Apelada | TA2025AP00326 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de FAJARDO<br><br>Caso Núm.:<br>LU2023CV00116<br><br>Sobre:<br>Ley 2 de 17 de octubre de 1961 (Procedimiento Sumario), Ley 80 de 30 de mayo de 1976 (Despido Injustificado), Ley 115 de 20 de diciembre de 1991 (Represalias) |

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Mateu Meléndez, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de noviembre de 2025.

El 8 de septiembre del año en curso, Julio A. Vega Pacheco (en adelante Vega Pacheco o el apelante) presentó ante este Tribunal de Apelaciones un recurso de *Apelación*. Mediante este nos solicita que revoquemos la *Sentencia Final* emitida el 28 de agosto de 2025, notificada el 29, por el Tribunal de Primera Instancia (en adelante, TPI), Sala Superior de Fajardo. Por virtud del aludido dictamen, el foro primario declaró Ha Lugar la Solicitud de Sentencia Sumaria promovida por Vieques Air Link, Inc. (en adelante, VAL o parte apelada) y, como resultado, desestimó en su totalidad la Querella por despido injustificado y represalias en el empleo incoada por Vega Pacheco contra VAL, sin especial imposición de costas u honorarios de abogados.

Con el beneficio de la parte apelada y conforme a la evidencia presentada, por las razones que más adelante explicamos, **confirmamos** el dictamen apelado.

**-I-**

A continuación, exponemos el trámite procesal más importante relacionado a la controversia de epígrafe, según recopilamos de los documentos que conforman el Apéndice del recurso.

El pleito de epígrafe comenzó con la presentación de una *Querella* por parte de Vega Pacheco por despido injustificado y represalias.[1] Entre otras cosas, alegó que trabajó para VAL desde el mes de agosto de 2016, hasta que fue despedido el 7 de marzo de 2023, alegadamente sin justificación. Asimismo, indicó que, desde finales del año 2021 hasta principios del 2023, fue objeto de hostigamiento laboral y represalias. Por los actos señalados, Vega Pacheco argumentó haber sufrido daños emocionales y económicos valorados en una suma no menor de $150,000.00.[2]

El 19 de junio de 2023, VAL contestó la *Querella.* En síntesis, sostuvo que el despido de Vega Pacheco fue justificado. Mientras, negó que este hubiera sido objeto de hostigamiento, ambiente hostil o actos en represalias.[3] Días después, VAL solicitó la conversión del procedimiento sumario a uno de naturaleza ordinaria.[4] Habiéndose opuesto el peticionario, el TPI rechazó la conversión.[5]

Ahora, a pesar de que el TPI mantuvo la naturaleza sumaria, el trámite del pleito se extendió significativamente. Al estudiar el legajo vemos que ello se debió a que durante el proceso surgieron varias controversias relacionadas con el descubrimiento de prueba, recurriéndose

---

[1] La reclamación se presentó al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA 3118 *et seq.* (Ley Núm. 2); Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA secs. 185a-185n (Ley Núm. 80); Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, 29 LPRA sec. 194 *et seq.* (Ley Núm. 115).

[2] SUMAC TPI, Entrada Núm. 1.

[3] *Íd.*, Entrada Núm. 11.

[4] *Íd.*, Entrada Núm. 12.

[5] *Íd.*, Entrada Núm. 19.

inclusive en varias ocasiones ante este Tribunal de Apelaciones y/o el Tribunal Supremo.[6] Luego de estos trámites, específicamente el 27 de junio de 2025, VAL instó una *Solicitud de Sentencia Sumaria.* Allí, alegó que la *Querella* carecía completamente de méritos y que debía ser desestimada en su totalidad.[7] Además, expuso que no existía controversia de hechos materiales que impidieran determinar que Vega Pacheco fue despedido justificadamente, y que su despido no responde a un acto de represalia. Con tal propósito, estableció ciento trece (113) hechos materiales incontrovertidos, fundamentados en la deposición de Vega Pacheco y anejos, mediante los cuales tal hecho quedaba demostrado.[8]

El 11 de agosto de 2025, Vega Pacheco se opuso a la sentencia sumaria y, a tales efectos, adujo que no se había presentado prueba admisible que permitiera al tribunal disponer de la querella de epígrafe en

---

[6] Así, por ejemplo, Vega Pacheco presentó moción para compeler contestación a interrogatorio al amparo de la Regla 34 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 34, oponiéndose a las objeciones y privilegios que VAL reclamó al contestar descubrimiento remitido. De la denegatoria de este escrito, sometió ante este Tribunal el recurso de *certiorari* KLCE202301444. Véase, *Íd.*, entradas núm. 15, 30, 40, 41, 54 y 68.

De igual forma, habiéndose autorizado la deposición de dos testigos- la Sra. Vanessa Vázquez y el Sr. Samuel Vázquez- Vega Pacheco acudió ante nos mediante recurso KLCE202400806 y ante el Tribunal Supremo mediante el *certiorari* CC-24-0562. Ambos tribunales se negaron a expedir los respectivos autos solicitados. Véase, *Íd.*, entradas 45, 77, 78, 80, 82, 84, 85, 102 y 103.

A su vez, Vega Pacheco solicitó al Tribunal autorización para deponer a varios gerentes de VAL. Tras varias órdenes del Tribunal, así como de mociones, oposiciones y réplicas el TPI declaró No Ha Lugar su solicitud. Ante esta negativa, Vega Pacheco presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones, KLCE202401389. Este foro revisor denegó la expedición del recurso. Véase, Entrada Núm. 105, 109 y 126. Inconforme, Vega Pacheco presentó una petición de *Certiorari* ante el Tribunal Supremo, CC-25-0057, la cual se declaró No Ha Lugar. Véase, Entrada Núm. 113, 124 y 127.

[7] SUMAC TPI, Entrada Núm. 128.

[8] *Íd.* La deposición de Vega Pacheco consta alrededor de cuatrocientas ocho (408) páginas. Entre los demás anejos en los que se fundamenta la *Solicitud de Sentencia Sumaria* presentada por VAL, se encuentran: Solicitud de empleo; Carta de Oferta de empleo; Acuse de Recibo de Manual de Empleado y Política de Vestimenta e Imagen Corporativa; Reglas de Conducta del empleo; Descripción del puesto; Memorandos internos de VAL; Manual General de Operaciones; solicitud y manejo de Acomodo por Prácticas Religiosas; Declaración Jurada de la Sra. Valentín Crespo, Gerente de Recursos Humanos (RHUM); Carta de reporte de incidentes y ambiente laboral hostil por Vega Pacheco a RHUM y manejo de dicha investigación; Investigación sobre evento con pasajera y su abordaje ocurrido el 2 de febrero de 2023; Manifiestos del vuelo 4011 (11:12am / 11:46am); Carta de terminación de empleo; entre otros documentos.

su totalidad por la vía sumaria.[9] En contrario, argumentó que existía controversia material sobre los siguientes asuntos litigiosos:

1. sobre la credibilidad de la empleada de Recursos Humanos de VAL, Maria del R. Valentín, respecto a la investigación que ésta realizó sobre el despido y la represalia sufrida por el Sr. Vega Pacheco mientras trabajó para dicha empresa y la información incluida, deficiencias y el manejo de las mismas;

2. sobre si fue Jean Santana quien manipuló e incluyó pesos incorrectos en el Manifiesto del Vuelo # 4011 del 22 de febrero de 2023 a las 11:12 AM;

3. sobre porqué VAL tomó la decisión de no despedir al Sr. Jean Santana de su empleo, al igual que hizo con el Sr. Vega Pacheco, cuando los documentos sometidos demostraron que dicho supervisor alteró el peso de la pasajera, Hildamar Rodríguez, añadiéndole a ésta 43 libras de peso en el Manifiesto del Vuelo #4011 de las 11:12 AM, demostrándose así el trato discriminatorio;

4. sobre si la querellada, VAL, por medio de su Departamento de Recursos Humanos, atendió y manejó adecuadamente, sus reclamaciones;

5. sobre si la querellada, VAL, examinó los sistemas de data y de informática de las computadoras que almacenaban el manifiesto de vuelo # 4011 de 22 de febrero de 2023, para cotejar a qué hora y quién incluyó la información de pesos incorrectos que se le atribuyó al Sr. Vega Pacheco;

6. sobre si el piloto o capitán del vuelo #4011, verificó y autorizó dicho vuelo con la información que luego se le atribuyó al Sr. Vega Pacheco en el manifiesto de vuelo y que dio lugar a su despido;

7. sobre si el piloto o capitán del vuelo #4011, fue disciplinado o no por autorizar el manifiesto que corresponde a dicho vuelo y a pesar de que el mismo alegadamente no cumplía con las normas reglamentarias de vuelo de la empresa, ni agencias de gobierno;

8. sobre la credibilidad del supervisor inmediato del Sr. Vega Pacheco, Jean Santana, con respecto a si autorizó o no a la última pasajera que se montó en el vuelo # 4011 de 22 de febrero de 2023, y que fuese incluida en dicho vuelo;

9. sobre si el supervisor inmediato del Sr. Vega Pacheco, Jean Santana, se refería de manera despectiva, irrespetuosa y en contravención con los reglamentos internos de la empresa sobre

---

[9] SUMAC TPI, Entrada Núm. 132. Vega Pacheco fundamentó su Oposición con: la deposición y documentación producida por VAL en su *Solicitud*; dos (2) deposiciones a dos compañeros de trabajo, el Sr. Vázquez Mújica y la Sra. Vázquez García y; la contestación a pliego de interrogatorios y requerimiento de producción de documentos por VAL en el descubrimiento de prueba. Cabe destacar, Vega Pacheco presentó la versión última de su oposición, el día 15 de agosto de 2025, en la cual incluye cinco (5) citas y/o referencias a evidencia que sostienen sus alegaciones. Véase *Íd.*, Entrada Núm. 136 y 138. Finalmente, el día 28 es que Vega Pacheco somete su versión corregida y final de la oposición. *Íd.*, Entrada Núm. 140 y 141.

éste como indicio y evidencia de la represalia alegada por el querellante y a la que fue sometido por dicho supervisor; y

10. sobre las condiciones de empleo del Sr. Vega Pacheco y el trato que éste recibió por parte de su supervisor inmediato en comparación con otros empleados de VAL que también ocupaban la posición de "counter & ramp agent" y si lo anterior constituye represalias por dicho supervisor, Jean Santana;

11. sobre si VAL como práctica frecuente o en el curso ordinario de sus negocios alteraba los manifiestos de vuelo, sobrecargando los pesos de los aviones, en violación a las normas y reglamentos federales de la FAA, penalizando y despidiendo injustificadamente al Sr. Vega Pacheco al así actuar como pretexto o subterfugio para su despido; y

12. sobre si el supervisor inmediato del Sr. Vega Pacheco, Jean Santana, usaba la aplicación de Whatsapp y mensajes de textos en su teléfono móvil personal para alterar las condiciones de empleo del querellante, insultarlo, y humillarlo a tal punto de tratarlo discriminatoriamente y tomando represalias en su contra por este haber solicitado un acomodo razonable por libertad de culto o creencias religiosas, entre otras razones.

Así las cosas, el 28 de agosto de 2025, notificada en autos el día 29, el foro recurrido emitió *Sentencia* a favor de la parte apelada mediante la cual dispuso su claro convencimiento de que los hechos materiales del presente caso no están en controversia.[10] Por tal motivo determinó que no existe razón alguna que justificara la celebración de una vista evidenciaria y, en consecuencia, declaró Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por VAL, y desestimó en su totalidad la *Querella* presentada por Vega Pacheco. En desacuerdo, el 8 de septiembre de 2025, Vega Pacheco sometió el recurso de epígrafe y le imputó al TPI equivocarse al:

- acoger la solicitud de sentencia sumaria de la parte Querellada y declarar incontrovertidos 111 hechos cuando los hechos materiales que inciden en las controversias de la querella de epígrafe fueron controvertidos;

- no hacer referencia, ni discutir, la evidencia juramentada que incluyó y que controvierte los hechos presentados por la Querellada;

- al dictar sentencia sumaria en una querella donde existen controversias sobre la credibilidad de testigos como lo son el empleado y supervisor de estación, Jean Santana y la Gerente de Recursos Humanos, María del R. Valentín, cuyas conductas y declaraciones fueron controvertidas conforme la Regla 36 de Procedimiento Civil;

---

[10] *Íd*., Entrada Núm. 142.

- acoger la declaración jurada de la Sra. Maria del R. Valentín, sin aplicar la doctrina del *sham affidavit* reconocida por la jurisprudencia del Tribunal Supremo; y al

- interpretar y aplicar las Leyes Núm. 2 de 1961, Núm. 80 de 1976 y Núm. 115 de 1991 en forma restrictiva cuando dichas leyes tienen un carácter eminentemente proteccionista y deben interpretarse liberalmente a favor del empleado(a), especialmente en el contexto de mociones dispositivas como las de sentencia sumaria.[11]

A esos efectos, el apelante nos pide que se devuelva el caso al Tribunal de Primera Instancia para la continuación de los procedimientos correspondientes, incluyendo la celebración de una vista en los méritos y/o juicio plenario, a fin de que se ventilen adecuadamente las controversias sustantivas en el caso y se garanticen sus derechos estatutarios y constitucionales.

Atendido el recurso, el 10 de septiembre de 2025, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto por el Reglamento de este Tribunal de Apelaciones para que presentara su oposición al recurso. Al día siguiente, el apelante presentó ante nos una *Moción en Auxilio de Jurisdicción* para que, en vista de la naturaleza sumaria del caso, se ordenara a la parte apelada a presentar alegato en un tiempo breve.[12] Mediante *Resolución*, emitida y notificada el 12 de septiembre de 2025, declaramos No Ha Lugar dicha moción.

El 10 de octubre de 2025, VAL presentó el *Alegato en Oposición a Apelación*.[13] Allí, planteó que el foro inferior actuó correctamente al dictar sentencia sumaria y desestimar las causas de acción del apelante, tras concluir, conforme al expediente, que no existen hechos materiales en controversia. En segundo lugar, expone que el apelante no presenta fundamentos nuevos ni controversias reales, aparte de los ya adjudicados por el TPI, ignorando los hechos incontrovertidos, los cuales fueron debidamente corroborados por prueba documental, así como por

---

[11] SUMAC TA, Entrada Núm. 1.
[12] *Íd.*, Entrada Núm. 3.
[13] *Íd.*, Entrada Núm. 7.

admisiones del propio apelante. Además, argumentó que la prueba anejada, validada por el foro primario, demuestra que Vega Pacheco incurrió en una falta sumamente grave, lo cual justificó plenamente su despido. También, adujo que el foro primario concluyó correctamente que no existe vínculo causal entre el despido del apelante y una actividad protegida, y mucho menos proximidad temporal entre las mismas, que constituya actuación en represalia.

Con el beneficio de ambas partes, damos por sometido el asunto y procedemos a resolver.

**-II-**

*A.*

El mecanismo procesal de la sentencia sumaria establecido por la Regla 36 de Procedimiento Civil, se utiliza en aquellos litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, resulta innecesaria la celebración de un juicio en su fondo. *Negrón Castro y otros v. Soler Bernardini, et al.*, 2025 TSPR 96, 216 DPR ___, al citar a *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024). Su propósito, es que los pleitos civiles se resuelvan de forma justa, rápida y económica. *Íd.,* al mencionar a *SLG Fernández-Bernal v. RAD-MAN, et al.*, 208 DPR 310, 334-335 (2021).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, establece el contenido y los requisitos de forma que deben observarse, tanto en la solicitud de sentencia sumaria presentada por la parte promovente, como en la oposición que pueda presentar la parte promovida. *León Torres v. Rivera Lebrón*, 204 DPR 20, 43 (2020). Así pues, conforme el inciso (e) de la aludida regla, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, más las declaraciones juradas y cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y pertinente.[14]

---

[14] 32 LPRA Ap. V, R. 36.3(e).

Para que un tribunal dicte sentencia sumaria a favor del promovente, ésta deberá, además, justificarse por el derecho aplicable. *CSM v. ELA*, 2025 TSPR 78, 216 DPR _____, al mencionar a *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023).

Procede dictar sentencia sumaria si de los documentos sometidos ante la consideración del tribunal surge que no existe controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia estricta de derecho.[15] Por el contrario, no procederá una moción de sentencia sumaria cuando (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Íd.*, al citar a *SLG Fernández-Bernal v. RAD-MAN, et al.*, a la págs. 335-336.

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos estamos llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias pautadas por la Regla 36.3 de Procedimiento Civil, *supra.* Claro está, debemos recordar que no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI, ni adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015). Cabe destacar que, en el caso en que no existan hechos materiales en controversia, este Foro procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Negrón Castro y otros v. Soler Bernardini, et al., supra,* al mencionar a *Fernández-Bernal v. RAD-MAN et al., supra*, pág. 338 y *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

---

[15] *Negrón Castro y otros v. Soler Bernardini, et al., supra,* al citar la Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V R 36.3(e); a *Rodríguez García v. UCA*, 200 DPR 929, 941 (2018); y a *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018).

Aparte de lo consignado en cuanto a la moción de sentencia sumaria, estimamos necesario añadir que en el caso *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013), nuestro Tribunal Supremo adoptó la doctrina de jurisdicción federal conocida como el *"sham affidavit doctrine"*. Esta doctrina consiste en evitar que, en respuesta a una solicitud de sentencia sumaria, una parte intente promover una controversia de hechos materiales valiéndose de un testimonio reciente que resulta contrario a una declaración bajo juramento emitida anteriormente, sin proveer una explicación para la contradicción entre ambas declaraciones. El propósito de la declaración posterior es dar una versión simulada, ficticia o falsa de hechos medulares con el propósito específico de impedir que se dicte sentencia sumaria en su contra, por ello es conocida como el *"sham affidavit doctrine"*. *Íd*. Véase, además, *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015).

Bajo el crisol doctrinario del *sham affidavit*, el Tribunal Supremo ha expresado:

> Esta aplica cuando: (1) una parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. Lugo Montalvo v. Sol Meliá Vacation, *supra*, pág. 221-222; SLG Zapata-Rivera v. J.F. Montalvo, *supra*, págs. 440-442; McClain v. Mason County, Ky., 618 Fed. Appx. 262, 266 (6to Cir.2015)

*B.*

La Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 del 30 de mayo de 1976, según enmendada, 25 LPRA Sec. 185a, (Ley 80), ofrece una valiosa protección a aquellos individuos empleados y contratados por tiempo indeterminado a ser remunerados de ser

despedidos injustificadamente de su trabajo. Este resarcimiento se conoce comúnmente como "mesada". *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020) citando a *González Méndez v. Acción Social et al.*, 196 DPR 213 (2016) y otros allí citados. Siendo así, es la mesada el remedio exclusivo disponible a un empleado cesanteado injustificadamente, a menos que no existan otras causas de acción independientes al despido. *Íd.* De esta forma, el propósito de la Ley 80 es dar mayor protección a los trabajadores, otorgándoles justa compensación ante un despido injustificado. Cabe señalar, dicho estatuto establece una presunción contra del patrono en la cual el despido del empleado es injustificado hasta tanto el patrono, quien tiene el peso de la prueba, demuestre justa causa para su acción. *Rivera v. Pan Pepín*, 161 DPR 681, 690 (2004); *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 378 (2001).

La Ley 80 no establece qué constituye un despido injustificado. No obstante, el aludido estatuto informa sobre varios escenarios que pueden liberar al patrono de responsabilidad por conducta atribuible al empleado. Así pues, se reputará **justa causa** para el despido si el empleado: (1) ha exhibido un patrón de conducta impropia o desordenada; (2) no ha cumplido con sus labores de manera eficiente, **ha realizado su trabajo** tarde o **negligentemente o en violación a las normas aplicables**, o (3) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento y los cuales le han sido suministrados oportunamente. *Íd*. (Énfasis nuestro).

De igual forma, se entenderá que el despido fue justificado si sucede a consecuencia de cierre, reorganización o reducción de la empresa, en particular: el cierre total, temporero o parcial de las operaciones del establecimiento; los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; o reducciones en empleo necesarias debido a una reducción en el volumen de

producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA Sec. 185b.

Aun así, es importante recordar que las circunstancias representativas de justa causa enumeradas en el discutido estatuto son meros ejemplos de acontecimientos asociados a un despido. Ello así, ya que este no puede prever el universo de incidencias que pueden surgir en un entorno laboral y que desemboquen en la cesantía de un empleado. *León Torres v. Rivera Lebrón*, *supra*, citando a *SLG Torres Matundan v. Centro Patología*, 193 DPR 920 (2015). Por último, es menester recordar que, en una acción por despido injustificado incoada por un empleado, es el patrono quien tiene el peso de la prueba para establecer que el despido estuvo justificado. Además, la Ley 80 dispone que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". Art. 2 de la Ley Núm. 80, *supra*; *González Méndez v. Acción Social et al.*, *supra*. Es decir, con dicha legislación sólo se penaliza los despidos caprichosos, irrazonables o injustificados.

C.

La Ley de Represalias Contra Empleado por Ofrecer Testimonio y Causa de Acción, Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*, (Ley 115), prohíbe a todo patrono "despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico". 29 LPRA sec. 194a. Ello, siempre que dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. *Íd*.

Para que se configure una causa de acción al amparo de la Ley 115, *supra*, "[e]l empleado deberá probar la violación mediante evidencia directa o circunstancial". 29 LPRA sec. 194a. Para ello, deberá probar *prima facie*: 1) que participó en una actividad protegida por el estatuto, y 2) que fue subsiguientemente despedido, amenazado o discriminado en el empleo. *Íd.;* Véase también*, Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997). **Si se probara lo anterior, "el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido". *Íd.* De así hacerlo, corresponderá al empleado "demostrar que la razón alegada por el patrono era un mero pretexto para el despido". *Íd.* (Énfasis suplido)**

En virtud de lo antes indicado, para tener una causa de acción bajo la Ley 115, *supra*, un empleado debe probar- mediante prueba directa o indirecta- un nexo causal entre la conducta del demandado y el daño sufrido. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *Feliciano Martes v. Sheraton*, 182 DPR 368, 395-396 (2011). No obstante, requiere un elemento de **proximidad temporal** (poco tiempo) entre la actividad protegida y la acción adversa sufrida por el empleado.

Si el empleado opta por el mecanismo directo, el empleado debe ampararse en prueba directa o circunstancial para demostrar el nexo causal entre la conducta y el daño sufrido. Por la vía indirecta, corresponderá al empleado establecer *prima facie* un caso de represalia. 29 LPRA sec. 194b; *Rivera Menéndez v. Action Services*, *supra*, pág. 445. Esto último lo logrará si prueba que: (1) participó en una actividad o conducta protegida por ley; (2) y que, posteriormente, sufrió una acción disciplinaria o adversa por parte del patrono. Es decir, que es necesario que el empleado haya sido despedido, amenazado o discriminado en el empleo, subsiguientemente a su participación en una actividad protegida.

En cuanto a la exigencia de que exista un nexo causal, nuestro ordenamiento ha seguido este enfoque, y se han establecido los siguientes

criterios: (1) si el empleado fue tratado de forma distinta que otros empleados; (2) si existió un patrón de conducta antagonista en contra del empleado; (3) si las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. *Feliciano Martes v. Sheraton*, *supra*, en la pág. 398. **La suficiencia de la proximidad temporal como prueba exclusiva de causalidad, dependerá de cuán cerca en el tiempo está la actividad protegida ejercida por el empleado y la acción adversa llevada a cabo por el patrono.** *Íd.,* pág. 399. Ahora, no toda acción de represalia se configura dentro de lo que pudiera catalogarse como poco tiempo, por lo que la proximidad temporal como inferencia de causalidad, resulta insuficiente. Por tanto, se requiere "elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa". *Íd*, pág. 400.

Lo antes indicado sólo aplica al empleado y su necesidad de establecer un caso *prima facie* por represalias. De esta forma, si el patrono logra fundamentar una razón no represiva para su decisión, **"se requerirá del empleado que, por preponderancia de la prueba, se valga de factores adicionales a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo"**. *Íd.*  (Énfasis suplido)

A la luz de lo anterior, la protección ofrecida al empleado en virtud de este estatuto no es absoluta. Ciertamente, todo patrono puede levantar la defensa de justa causa cuando se le acusa de haber realizado un despido injustificado. *García v. Darex P.R., Inc.*, 148 DPR 364, 380 (1999). Reiteramos, **"[a]unque el despido de un empleado est[é] prohibido (por encontrarse en una situación protegida) si existe justa causa para despedirlo, dicha prohibición cede ante la existencia de la justa causa"**. *Íd.* (Énfasis nuestro). Es decir, la prohibición de despido rige mientras no hay justa causa para el

despido del empleado. *Íd.* En ese sentido, como la ley no define específicamente el concepto de justa causa, acudimos a las circunstancias enumeradas en la Ley 80 sobre los tipos de conducta que constituyen la razón y motivos justificados para el despido, por estar reñidos con la ordenada marcha y normal funcionamiento de una empresa.

**-III-**

Antes de explicar nuestra decisión, según nos ordena la normativa jurídica aplicable a las solicitudes de sentencia sumaria, hemos evaluado si la solicitud de sentencia sumaria sometida por VAL cumple con los requisitos de forma que exige la Regla 36 de Procedimiento Civil, *supra.* Efectuado el examen, concluimos que así fue. El escrito contiene una breve exposición de las alegaciones de las partes, identifica los asuntos litigiosos, la causa de acción sobre la cual solicita la sentencia sumaria, e incluye una relación concisa, organizada y en párrafos separados de aquellos hechos esenciales y pertinentes sobre los que proponen no existe controversia. Sobre esto último, también hace referencia a la evidencia admisible en la que descansa su propuesta. Igualmente, la moción de sentencia sumaria presentada expone las razones por las cuales la parte proponente entiende debe dictarse sentencia en virtud del derecho aplicable que incluye y el remedio que se solicita.

Al igual que hizo el foro primario en primera instancia, similar conclusión no necesariamente podemos alcanzar en cuanto a la oposición a la moción de sentencia sumaria del apelante. Esto, pues para rebatir muchos de los hechos incontrovertidos propuestos por VAL, se limitó a presentar argumentos o teorías o citar el derecho aplicable relativo a la sentencia sumaria. Aun así, la ausencia no implica una concesión automática de una solicitud de sentencia sumaria puesto que la concesión

de una solicitud de sentencia sumaria ocurrirá cuando en derecho así proceda.[16]

Concluido el avalúo de la sentencia sumaria y su oposición, entramos a evaluar los reclamos presentados en el caso de epígrafe a los fines de valorar si existen controversias de hechos medulares que impidan la resolución sumaria del pleito, así como para determinar si la aplicación del derecho efectuada por el foro primario fue correcta. El apelante plantea que, en efecto, hay hechos medulares controvertidos que impiden resolver sumariamente.

Así, en la discusión de sus señalamientos de error, afirma que la sentencia apelada debe ser revocada, pues acogió ciento once (111) hechos propuestos por VAL en su solicitud de sentencia sumaria, más no hizo referencia a aquellos hechos que incluyó con su oposición que los controvertían. Específicamente, sostiene que controvirtió la alegada justa causa para su despido, pues la prueba documental y testifical que sometió en oposición a la moción sentencia sumaria sugiere que: (1) actuó con autorización de su supervisor para incluir a Frances Carrasquillo como novena pasajera del vuelo #4011 del 22 de febrero de 2023; (2) su propio supervisor cometió error en el manifiesto que preparó, pues incluyó el peso equivocado de otra pasajera; (3) los dos manifiestos relacionados al vuelo #4011 presentaban discrepancias en pesos que no fueron investigadas de forma imparcial o eficiente; y (4) era una práctica habitual en VAL alterar los documentos que incluyen los pasajeros.

Según Vega Pacheco, tales hechos son materiales pues inciden en las deficiencias y errores cometidos en la investigación de Recursos Humanos que dieron lugar a su despido, así como en la veracidad de la alegada causa de despido o si esta fue un mero pretexto para encubrir la represalia que sufrió durante casi un año. Según él, el único error que admitió fue que

---

[16] *Audiovisual Lang. v. Sist. Est. Natal Hnos., supra.*

incluyó en el manifiesto el peso de Frances Carrasquillo como de 160 libras cuando pesaba 190.

A los fines de atender estos argumentos hemos examinado minuciosamente el expediente ante nuestra consideración, particularmente, la solicitud de sentencia sumaria sometida por VAL, así como la oposición que frente a esta presentó el apelante. De la misma forma, hemos evaluado la Sentencia Final dictada en el caso. Tras así hacer, concluimos que, contrario a lo alegado por el apelante, no existe controversia alguna que impidiera la resolución sumaria de la controversia. Esto, pues VAL demostró mediante prueba fehaciente que Vega Pacheco fue despedido al realizar su trabajo de manera negligentemente **y en violación a las normas aplicables**, así como en contravención a la ordenada marcha y normal funcionamiento de la empresa al alterar el peso de uno de los pasajeros en el manifiesto preparado para el vuelo #4011 del 22 de febrero de 2023.

De igual forma, evidenció que el propio apelante admitió que lo hizo mal al montar la pasajera, pues alteró el peso y que al preguntársele porqué lo hizo mal, respondió: "Porque lo que quería era vender el boleto, y sí, lo hice mal, pues´…"[17]. Recordemos que es a consecuencia de la investigación realizada en cuanto al mencionado vuelo y las mencionadas declaraciones, que el 7 de marzo de 2023, VAL le hizo entrega a Vega Pacheco de la carta de despido.[18] O sea, que a través de la documentación que sometió en apoyo de su solicitud de sentencia sumaria, VAL rebatió la presunción de que el despido del apelante fue injustificado.

Vega Pacheco intenta atacar este hecho y con tal propósito asevera haber demostrado la existencia de ciertos hechos, a su entender materiales, que fuerzan revocar la sentencia apelada. Sin embargo, los hechos en controversia planteados por Vega Pacheco- tanto en su oposición de

---

[17] SUMAC TPI, Entrada Núm. 128, Anejo 24, pág. 4.
[18] *Íd.*, Anejo 25.

sentencia sumaria, como en el recurso de apelación- nos parecen insuficientes para rebatir aquellos presentados por VAL.[19]

La decisión del TPI fue fundamentada, razonada y conforme al derecho aplicable. No existen hechos materiales en controversia, la prueba preponderante anejada a la solicitud de sentencia sumaria demuestra que el despido respondió a una justa causa y no, como alega Vega Pacheco, en represalia por el acomodo aprobado por práctica religiosa, ni por haber reportado a RHUM incidentes sobre ambiente hostil.

**-IV-**

Por los fundamentos antes expuestos, confirmamos la sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] Estimamos adecuado destacar que, de los 111 hechos incontrovertidos propuestos por VAL en su solicitud de sentencia sumaria y acogidos por el TPI, solamente 5 de ellos descansan en evidencia distinta al propio testimonio del apelante durante la deposición que le fue tomada en el caso.